**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **EAST PLANO ISLAMIC CENTER (EPIC),** §<br> *Plaintiff* §<br> §<br>**v.** §<br> §<br> §<br>**TEXAS FUNERAL SERVICES** §<br>**COMMISSION and TEXAS FUNERAL** §<br>**SERVICES COMMISSION EXECUTIVE** §<br>**DIRECTOR in their official capacity.** §<br> *Defendants* § | Civil Action No. 1:25-cv-1085 |

### PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

On March 26, 2025, the Texas Funeral Service Commission issued a cease-and-desist order forbidding the East Plano Islamic Center (EPIC), a nonprofit religious congregation, from engaging in time-honored Islamic funeral rites for the dead. Without a hearing, without due process, and without statutory authority, the Commission directed EPIC to immediately cease religious practices that EPIC had previously carried out safely, lawfully, and peacefully for years. These were not, and are not, commercial services. They are sacred communal obligations—ritual washing, shrouding, and the Janaza prayer—performed in accordance with centuries of Islamic tradition and as a matter of spiritual duty.

Since the order was issued, at least twelve EPIC congregants have passed away without receiving a proper religious burial at their home mosque. The harm is neither speculative nor remote. It is unfolding in real time. On July 6, 2025, EPIC's clergy were barred from washing and shrouding a deceased member of the community and were unable to lead the funeral prayer—after filing suit and before it could reach the courthouse for a temporary injunction hearing. EPIC cannot predict when the next death will occur, but Islamic law requires burial within twenty-four

1

hours.  Every day that passes without relief risks further irreparable injury to the religious freedom of EPIC and its members.

EPIC respectfully moves this Court to enjoin the Commission's unlawful and unconstitutional order.  The record establishes a clear likelihood of success on the merits.  The directive exceeds the scope of the Commission's statutory authority, violates the Texas Religious Service Clause and Article I, Section 6 of the Texas Constitution, and impermissibly burdens EPIC's religious exercise under the First Amendment.  The resulting harm is immediate, ongoing, and constitutionally intolerable.  There is no injury to the state in allowing Muslims to worship as they have always done.  There is extraordinary harm in allowing the government to dictate how a faith may honor its dead.

A hearing on EPIC's request for a temporary injunction was scheduled for July 14, 2025, in state court.  But the state removed the case to this Court on July 11, effectively stripping EPIC of its ability to protect its rights on the schedule previously set.  Emergency relief is now the only means of preserving the status quo and preventing additional spiritual and constitutional injury.  The Court should enter a temporary restraining order (attached as a proposed order) and set this matter for a prompt preliminary injunction hearing.  EPIC also asks that the Court waive or impose only a nominal bond, consistent with Rule 65(c), given the absence of any economic harm to Defendants and the religious nature of EPIC's mission.

This case is not about commerce.  It is about conscience.  It is not about licensing.  It is about liberty.  EPIC asks only for the right to honor its dead in accordance with its faith.  That right is guaranteed by the Constitution.  It deserves the protection of this Court.

**BACKGROUND**[1]

EPIC is a nonprofit Islamic congregation in Plano, Texas.  Under Texas law it is not (and has not been) operating a commercial funeral establishment.  Rather, EPIC assists Muslim families by arranging and facilitating religious funeral services (washing, shrouding, and performing the Janāzah prayer) in partnership with licensed funeral providers.  On March 26, 2025, the Texas Funeral Service Commission's Executive Director issued a cease-and-desist letter ordering EPIC "immediately" to stop what he called "unlicensed funeral operations" on EPIC's premises.  Dkt. 1-3 at 66.  EPIC complied and ceased its religious funeral services.  Since then, EPIC has identified at least eleven congregants who failed to receive an Islamic burial because of the March 26, 2025 Cease & Desist Order.  *Id.* at 24.

After attempts to resolve the dispute without litigation failed, EPIC filed its Original Petition in the 345th District Court of Travis County on July 2, 2025, and sought a temporary restraining order.  *See* Dkt. 1-3 at 5–66.  EPIC's lawsuit alleges (among other things) that the letter and any enforcement action violate EPIC members' rights under the Texas and U.S. Constitutions and exceed the Commission's statutory authority granted by the Texas Occupations Code, which is limited to commercial funeral establishment and those charging commission for their services. *Id.* at 5–33.  The lawsuit names the Commission and its Executive Director (official capacity only) as defendants.  *Id.*  While the district court declined to grant an emergency temporary restraining order, the court promptly set EPIC's application for temporary injunction for hearing on July 14, 2025, and issued an order compelling Defendants to appear.  *Id.* at 68.

---

[1] The complete, sworn factual background giving rise to this litigation is contained in the Verified Original Petition, Application for Temporary Restraining Order, Application for Temporary Injunction, and Application for Permanent Injunction.  *See* Dkt. 1-3 at 5–66.

Defendants answered on July 10 and removed the case to this Court on July 11, the last business day before the scheduled temporary injunction hearing they had been ordered to attend. Dkt. 1; Dkt. 1-3 at 73–77. In the interim, EPIC's ability to perform even the most basic aspects of Islamic funerals has been frozen by the state directive.

Three days after the emergency relief was denied, yet another congregant passed and could not receive Islamic funeral rites through the EPIC Mosque. EPIC cannot predict when congregants will pass, but Islamic burials are meant to occur within 24 hours of death. The State's removal has now suspended the temporary injunction hearing, meaning that EPIC will not be able to seek relief to prevent what could be additional, irreparable harms—along the lines of what happened on July 6, 2025. *See* **Ex. 1** (sworn declaration).

The State's removal of this matter to federal court has deprived EPIC of its injunction hearing and threatens to further delay relief. Without a TRO, EPIC and its congregants risk seeing their religious freedom further eroded.

These injuries are precisely the sort of irreparable harm that TROs are designed to prevent. Meanwhile, Defendants have proffered no evidence that barring EPIC's religious rites serves any valid public interest. To the contrary, EPIC's practices are peaceful, involve no hazardous procedures (no embalming or cremation), and have long been safely performed in coordination with licensed funeral homes.

The cease-and-desist order appears motivated by unfounded fears about "Sharia law" rather than any legitimate health or safety concern. In any event, if the Commission disagrees with these practices it has an adequate remedy at law (a contested administrative or judicial process). It cannot summarily bar EPIC and its congregants from exercising its religion under threat of civil and criminal sanction.

4

## ARGUMENT AND AUTHORITIES

**I.    PRELIMINARY INJUNCTION STANDARD.**

The standard for issuing a Temporary Restraining Order ("TRO") is the same as the standard for issuing a preliminary injunction. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Nianga v. Wolfe*, 435 F. Supp.3d 739 (N.D. TEx. 1 020).  Under FED. R. CIV. P. 65, to secure a preliminary injunction, a movant must establish the following four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.  *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

**II.   THE COMMISSION'S ORDER VIOLATES CLEAR CONSTITUTIONAL AND STATUTORY LIMITS REQUIRING IMMEDIATE RELIEF**

**A.    EPIC IS LIKELY TO SUCCEED ON ITS ULTRA VIRES CLAIM.**

EPIC is substantially likely to succeed on the merits because the Texas Funeral Service Commission and its Executive Director acted beyond the scope of their statutory authority in issuing the March 26, 2025 cease-and-desist letter.  Dkt. 1-3 at 66.  The letter purports to prohibit EPIC from engaging in religious funeral rites that are core to the Muslim faith.  But the statute the Commission invokes—Chapter 651 of the Texas Occupations Code—confers no such power.   It does not authorize the Commission, or its Executive Director, to unilaterally enjoin private religious conduct through a cease-and-desist letter, and it does not extend the Commission's regulatory jurisdiction to a religious institution like EPIC in the first place.

First, the Executive Director lacks the authority under Chapter 651 to prohibit non-license-holders from operating without a license absent judicial intervention.  While the statute allows the Commission to bring enforcement actions against those it believes are operating unlawfully, it does

not permit the Executive Director to issue injunctive directives on his own. Chapter 651 makes clear that such action must be pursued in court. *See, e.g.*, TEX. OCC. CODE § 651.451 (authorizing injunctions for unlicensed activity "through the attorney general or a district or county attorney"). The Commission cannot sidestep that requirement by issuing cease-and-desist letters that function as de facto injunctions without due process or judicial oversight.

Second, EPIC does not fall within the scope of the Commission's statutory jurisdiction. Under Texas law, a "funeral establishment" is defined as "a place of business used in the care and preparation for burial or transportation of a dead human body." TEX. OCC. CODE § 651.001(8). That definition presumes commercial activity—it refers to a "place of business." Likewise, "funeral directing" is defined by statute as the provision of funeral-related services "for compensation." *Id*. § 651.001(7). But EPIC is not a business, and it does not perform funeral services for compensation. Rather, it is a nonprofit religious institution, and the rites it conducts—including ritual washing, shrouding, and prayer—are religious obligations performed by members of the faith community as a matter of spiritual duty, not commercial transaction. *See* Dkt. 1-3 at 12-24 (Verified Petition).

The verified record confirms that EPIC never engaged in the practice of funeral directing within the meaning of Chapter 651. It did not embalm, prepare bodies for transportation, or perform services for compensation. It retained licensed funeral homes—including Hughes Family & Tribute Center and Harris Funeral Home—to perform any required functions that fall within the Commission's regulatory purview. What EPIC did do, and what the Commission now seeks to prohibit, is perform time-honored Muslim religious rites that have been carried out by faith communities for centuries. That includes washing and shrouding the deceased, leading Janaza prayer, and facilitating the communal obligation of a proper religious burial.

6

In short, the Commission's action is both procedurally unauthorized and substantively overbroad. EPIC does not meet the statutory definition of a funeral establishment, nor has it engaged in conduct that falls within the licensing requirements of Chapter 651. The Executive Director's attempt to ban EPIC's religious practices without judicial process far exceeds the limited authority granted under the statute. For that reason, EPIC is likely to prevail on the merits, and temporary relief is warranted to prevent continued irreparable harm.

**B.      EPIC IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE COMMISSION'S MARCH 26 CEASE-AND-DESIST ORDER VIOLATES THE TEXAS RELIGIOUS SERVICE CLAUSE.**

EPIC is substantially likely to prevail on the merits because the March 26, 2025 cease-and-desist letter issued by the Commission's Executive Director violates the Texas Religious Service Clause—a constitutional amendment adopted by the people of Texas in 2021 to shield religious services from governmental interference.

As recently reaffirmed by the Texas Supreme Court, "[t]he people of Texas voted to amend the Texas Constitution in 2021 by adding a new clause," the Texas Religious Service Clause, which categorically forbids the state or any political subdivision from "enact[ing], adopt[ing], or issu[ing] a statute, order, proclamation, decision, or rule that prohibits or limits religious services, including religious services conducted in churches, congregations, and places of worship, in this state by a religious organization established to support and serve the propagation of a sincerely held religious belief." TEX. CONST. art. I, § 6-a; *Perez v. City of San Antonio*, No. 24-0714, __ S.W.3d __, 2025 WL 1675639, 2025 Tex. LEXIS 485, at *2 (June 13, 2025). The Court made clear that where this provision applies, its protections are not subject to judicial balancing or policy justification: "its force is absolute and categorical, meaning it forbids governmental prohibitions and limitations on religious services regardless of the government's interest in that limitation or how tailored the limitation is to that interest." *Id*. at *34.

There is no serious question that the Religious Service Clause applies here.  The Texas Funeral Service Commission is a state agency and thus falls squarely within the scope of "the state or a political subdivision of this state."  EPIC, for its part, is a religious organization formed to support and serve the propagation of Islam, including by facilitating funeral rites required under Islamic law.  *See* Dkt. 1-3 at 12-24 (Verified Petition).  These rites are not incidental to the faith— they are religious services of deep spiritual and doctrinal significance.  The March 26 order, issued under the authority of the Commission's Executive Director, directly prohibited or limited those services, including services conducted in EPIC's mosque, a recognized place of worship.

Among the activities the Commission's order effectively prohibits are: washing and shrouding the deceased, transporting the body to and from the mosque, notifying the community of a congregant's passing, leading the Janaza prayer, and assisting the family with burial arrangements.  Each of these acts constitutes a religious service within the meaning of the Texas Constitution.  *See* **Ex. 1** (Baajour Decl.).  They are not commercial transactions.  They are obligations imposed on the Muslim community as a matter of collective religious duty.  *See also* Dkt. 1-3 at 12–14 (the verified pleading, describing EPIC's beliefs regarding the communal obligation to perform the Janaza).

Because the Commission's order "prohibits or limits" these services, it falls squarely within the constitutional prohibition. Under Perez, that is the end of the matter. "When the Texas Religious Services Clause applies, its force is absolute and categorical." *Id*.  The government's interests— no matter how compelling—do not justify the infringement.  Nor does it matter whether the restriction is temporary, narrow, or incidental.  The Constitution removes from the government the power to make that call.

**C.    EPIC IS LIKELY TO PREVAIL ON THE MERITS BECAUSE THE COMMISSION'S ORDER VIOLATES THE BROADER RELIGIOUS PROTECTIONS GUARANTEED BY ARTICLE I, SECTION 6 OF THE TEXAS CONSTITUTION.**

Even apart from the recently adopted Religious Service Clause, EPIC is likely to succeed on the merits because the March 26, 2025 cease-and-desist letter, and any future effort to limit EPIC's religious funeral practices, violates the Texas Constitution's broader guarantee of religious freedom.  Texas courts have long recognized that the state constitution provides greater protection for religious liberty than the federal Constitution.  *See Howell v. State*, 723 S.W.2d 755, 758 (Tex. App.—Texarkana 1986, no writ).

Article I, Section 6 of the Texas Constitution states that "[a]ll men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences." It further provides that "[n]o human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion," and prohibits legal preference for any religious society or mode of worship.  Most significantly, it imposes a constitutional duty on the Legislature "to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship."

The Commission's March 26 order stands in direct conflict with these principles.  It targets religious activity that lies at the heart of EPIC's faith practice.  The order prohibits the mosque and its congregants from preparing the deceased for burial, gathering for community prayer, and supporting grieving families in accordance with Islamic tradition.  These rites are not optional or symbolic.  They are acts of worship grounded in centuries of religious belief and communal obligation.  *See* **Ex. 1** (Baajour Decl.); *see* Dkt. 1-3 at 12–24 (Verified Petition).

Islam requires that the deceased be buried as soon as possible, ideally within 24 hours.  The body must be ritually washed, wrapped in a shroud, prayed over in congregation, and buried facing

9

Mecca.  These practices are performed not for profit but out of religious duty.  EPIC is a house of worship, not a business, and the services it provides are expressions of faith, not commerce.

By attempting to prevent EPIC from carrying out these rites, the Commission has interfered with the rights of conscience and worship guaranteed by Article I, Section 6.  The Texas Constitution does not permit such interference.  It guarantees the right to worship free from state control, and it demands equal protection for every denomination's public worship practices.

The Texas Constitution protects these practices, and the Commission's attempt to restrict them cannot stand. EPIC is therefore entitled to injunctive relief.

> **D.**    **EPIC IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE COMMISSION'S MARCH 26 ORDER VIOLATES THE FIRST AMENDMENT'S FREE EXERCISE CLAUSE.**

EPIC has properly stated a claim under 42 U.S.C. § 1983 and is likely to prevail on the merits. To establish a Section 1983 claim, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the violation was committed by a person acting under color of state law.  *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).  EPIC meets both requirements.

First, EPIC alleges a violation of its right to free exercise of religion under the First Amendment.  The Free Exercise Clause provides that "Congress shall make no law … prohibiting the free exercise" of religion.  U.S. CONST. amend. I. This protection applies to the States through the Fourteenth Amendment.  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)).  The Clause safeguards not only religious belief but religious conduct.  Indeed, as the Supreme Court has recognized, the Free Exercise Clause "does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (or abstention from) physical acts." *Id*. at 523 (internal quotation marks omitted).

10

The Commission's March 26, 2025 cease-and-desist letter directly prohibits EPIC from engaging in precisely that kind of protected religious conduct. The order forbids EPIC from carrying out religious burial rites, including ritual washing, shrouding, prayer, and facilitating timely burial in accordance with Islamic tradition. These are not administrative functions or commercial activities. They are religious observances, performed not for profit, but as a matter of faith.

Second, EPIC has plausibly alleged that the Commission's order fails both neutrality and general applicability. A plaintiff can establish a free exercise violation by showing that a government entity burdened religious conduct under a policy that is not neutral or generally applicable. *Kennedy*, 597 U.S. at 525. A policy fails general applicability if it prohibits religious conduct while permitting analogous secular conduct, or if it provides mechanisms for individualized exemptions without accommodating religious exercise. *Id*. at 526 (citing *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021)).

Here, the Commission has singled out EPIC's religious practices for prohibition, even though secular groups and other non-Muslim entities are permitted to engage in comparable activities. Upon information and belief, no similar cease-and-desist orders have been issued against non-Muslim faith-based groups that engage in death-related services as part of their spiritual mission. EPIC itself engaged in these same practices for years without incident, until Islamophobic complaints raised baseless concerns about so-called "Sharia law." The targeting of EPIC, and EPIC alone, reflects an impermissible religious gerrymander—not a neutral or generally applicable policy.

Moreover, the March 26 order cannot survive strict scrutiny. To justify the burden imposed on EPIC's religious conduct, the government must demonstrate that the order serves a compelling

state interest and is narrowly tailored to achieve that interest. *Kennedy*, 597 U.S. at 525. The Commission cannot meet that standard. The Executive Director has not identified a compelling reason for interfering with EPIC's long-standing religious practices. Nor is there any indication that the order is narrowly tailored to address a specific risk or violation. Instead, the order imposes a categorical ban on religious conduct that EPIC is constitutionally entitled to perform.

The First Amendment protects the very practices the Commission has sought to suppress. The ongoing enforcement of the March 26 order constitutes an ongoing violation of federal law. Accordingly, EPIC respectfully asks this Court to enter prospective injunctive relief prohibiting the Commission's Executive Director from enforcing the order or taking any future action that would interfere with EPIC's religious funeral practices. These rites are protected by the Constitution, and the Commission's interference with them cannot be allowed to stand.

## III.   IRREPARABLE HARM AND INADEQUATE REMEDY AT LAW.

The irreparable-injury requirement is not merely satisfied here—it is overwhelmingly met. When government action violates constitutional rights, federal and Texas law recognizes that such harm is, by its nature, irreparable. That principle holds with particular force when the rights at issue involve the free exercise of religion. The Supreme Court has long held that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (discussing the *Elrod* holding in the context of religious rights, including statutory rights).

EPIC's harm is not speculative. It is real, it is ongoing, and it strikes at the very foundation of religious freedom. The Commission's March 26, 2025 cease-and-desist order prohibits EPIC from engaging in religious funeral rites that form a core part of its mission as a mosque. These

include the ritual washing and shrouding of the deceased, issuing calls to prayer, gathering the community for the Janaza prayer, and facilitating prompt burial in accordance with Islamic law. These are not symbolic practices. They are mandatory religious obligations that must be fulfilled by the community upon the death of a Muslim. Denying those rites imposes profound spiritual, emotional, and religious injury on both the deceased and the living.

What is occurring here is not minimal. Since the issuance of the Commission's order, EPIC's community has been forced to forgo or truncate religious rites for at least twelve congregants who have passed away. *See* **Ex. 1** (Baajour Decl.); *See* Dkt. 1-3 at 12-24 (Verified Petition). In each case, families have suffered the pain of burying a loved one without the full observance of Islamic law. That is not a procedural inconvenience. It is an irreparable loss that no subsequent remedy can cure.

On July 6, 2025, for example, EPIC clergy were physically barred from performing the ritual washing and shrouding of a deceased congregant. They were unable to gather the community for prayer. *See* **Ex. 1** (Baajour Decl.). These moments, once lost, cannot be recreated. Religious rites are time-bound, deeply personal, and spiritually significant. A belated ruling cannot restore what has been denied. These are not services that can be postponed and resumed later without consequence. They are acts of worship that must occur at the moment of death and burial. When the government obstructs them, the injury is not only immediate, it is permanent.

Moreover, there is no adequate remedy at law. No form of monetary compensation can redress the denial of a family's right to bury their loved one in accordance with their religious beliefs. EPIC does not seek damages. It seeks only the ability to resume its religious obligations without state interference. Defendants have offered no mechanism by which these harms might

be mitigated.  The only "solution" is a judicial order halting the enforcement of the Commission's directive and allowing EPIC to fulfill its religious mission in peace.

The State of Texas, on the other hand, suffers no injury from Muslims practicing their faith in accordance with longstanding religious tradition.  The only difference now is that the State has decided to treat EPIC's religious conduct as suspect, without any legal basis for doing so.[2]

Injunctive relief is not simply appropriate.  It is essential.  Every day without relief brings the risk that another Muslim in EPIC's community will die and be buried without the rites their faith demands.  That is not an injury that can be deferred or unwound.  It is the exact kind of harm that courts have repeatedly found to be irreparable.  EPIC's situation falls squarely within that doctrine, and immediate relief is required to prevent further constitutional violations.

IV.    **THE EQUITIES AND PUBLIC INTEREST DECISIVELY FAVOR RELIEF.**

The Supreme Court has made clear that courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008).  However, injunctions protecting the First Amendment are always in the public interest.  *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).  This principle has particular resonance where the constitutional rights of religious communities are at stake.  *Id.*  Enjoining the enforcement of an unconstitutional government order not only halts ongoing violations but also reinforces the constitutional guarantee that the government shall make no law prohiabiting the free exercise of religion.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976).

---

[2] For more context on why the State has made this decision, please see the verified pleading and the chronology of events contained therein.  *See* Dkt. 1-3 at 17–22.

14

Second, the balance of harms clearly favors EPIC.  The mosque and its congregants are currently suffering irreparable spiritual injury, with each passing day bringing the risk that another member of the community will die without receiving funeral rites required by their faith.  This is not a hypothetical concern.  EPIC has already been prevented from performing such rites in at least a dozen cases since the Commission's March 26 directive.  The harm is continuing, personal, and constitutionally significant.  Defendants, by contrast, suffer no cognizable harm from the issuance of injunctive relief.  The only thing the Commission stands to lose is the power to enforce an unlawful and ultra vires order—an order it had no legal authority to issue in the first place.  The state has no legitimate interest in blocking lawful religious practice.

Third, requiring EPIC to post a substantial bond would impose an unnecessary burden on a nonprofit religious institution engaged in constitutionally protected conduct.  Rule 65(c) of the Federal Rules of Civil Procedure permits the Court to waive or limit the bond requirement when the enjoined party will suffer no economic harm.  Here, Defendants cannot identify any monetary loss that would result from the temporary suspension of their enforcement efforts.  The only harm alleged is the loss of authority to pursue enforcement against EPIC, which is not a financial injury.  A large bond would serve no protective purpose and would unjustly deter the exercise of fundamental rights.  EPIC respectfully requests that any bond be waived entirely or set at a nominal amount.

## CONCLUSION AND PRAYER

Each of these factors supports the entry of temporary relief. The public interest strongly favors protection of religious liberty.  The harm to EPIC and its congregants is profound and ongoing.  The burden on the state is non-existent.  And the constitutional violations at issue are not speculative but active and continuing.  The law is clear, the equities are aligned, and the need for

injunctive relief is urgent.  EPIC respectfully asks this Court to act now to prevent further injury

and uphold the freedoms guaranteed by the First Amendment and its Texas counterparts.


**Dated:** July 2, 2025

Respectfully submitted,

**TERRAZAS PLLC**

1001 S. Capital of Texas Highway, Bldg. L, Suite 250
Austin, Texas 78746
512.680.3257

By:  /s/ *Eric A. Hudson*
Eric A. Hudson
State Bar No. 24059977
ehudson@terrazaspllc.com
Benjamin L. Dower
State Bar No. 24082931
bdower@terrazaspllc.com

**ATTORNEYS FOR EAST PLANO ISLAMIC CENTER**


**CERTIFICATE OF CONFERENCE**

I affirm that I spoke with lead counsel for the Defendants on July 10, 2025 by telephone. Opposing counsel indicated an intent to remove this case to federal court, and I indicated that we would be seeking further relief from the federal district court if the parties could not agree on relief pending a hearing in the federal court.  Opposing counsel indicated that he has reviewed the Original Petition, understood Plaintiff's position, and expressed an intent to speak with his counsel and respond on their position.  No response has been sent.  Therefore, it is presumed that Defendants oppose the relief sought in this request.

/s/*Eric A. Hudson*
Eric A. Hudson


**CERTIFICATE OF SERVICE**

I affirm that I have filed this application through the Western District of Texas's ECF system, serving a copy on all counsel of record in the process.

/s/*Eric A. Hudson*
Eric A. Hudson


16