IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EAST PLANO ISLAMIC CENTER (EPIC), | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:25-cv-1085-DAE |
| TEXAS FUNERAL SERVICES | § | |
| COMMISSION and TEXAS FUNERAL | § | |
| SERVICES COMMISSION EXECUTIVE | § | |
| DIRECTOR in their official capacity, | § | |
| *Defendants*. | § | |

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER**

---

TO THE HONORABLE DAVID A. EZRA:

NOW COME Defendants the Texas Funeral Services Commission ("TFSC") and its Executive Director (sued in the official capacity only), to file this Response to Plaintiff's Motion for Temporary Restraining Order. Defendants would respectfully show the Court as follows:

## INTRODUCTION

Plaintiff East Plano Islamic Center ("EPIC") seeks extraordinary emergency relief but bases its requests on mischaracterizations of fact and law. At bottom, TFSC did not target EPIC's religious practice, but rather issued a cease-and-desist directive after discovering evidence that unlicensed funeral operations – that is to say, activities plainly regulated under Chapter 651 of the Texas Occupations Code – were being conducted on EPIC's premises. TFSC has the statutory authority and obligation

1

to enforce Texas law as written, including to ensure that funeral activities performed for the public comply with applicable licensing and safety requirements.

Plaintiff's application for emergency injunctive relief fails to meet the burden necessary for a temporary restraining order ("TRO") because: 1) EPIC is unlikely to succeed on the merits; 2) EPIC fails to show irreparable harm; and 3) the public interest does not support emergency injunctive relief.

## BACKGROUND

Plaintiff EPIC is a religious organization and mosque based in Plano, Texas. *See* Verified Pet. ¶ 1. In addition to offering religious services and community support, EPIC facilitates certain end-of-life services for its members, including ritual body washing, shrouding, and coordination of funeral prayers. *Id* at ¶¶ 19–24.

On or about March 26, 2025, the TFSC Executive Director issued a cease-and-desist letter to EPIC. *See* Verified Pet., Ex. 4. The letter advised EPIC that, based on public representations and available information, TFSC believed EPIC was operating as a funeral home without an establishment license, in violation of Chapter 651 of the Texas Occupations Code. *Id*. The letter demanded that EPIC cease such funeral service operations. *Id*.

Chapter 651 regulates the funeral industry in Texas, requiring licensure for persons or entities that engage in the business of funeral directing or operate a funeral establishment. *See* Tex. Occ. Code §§ 651.001(7)–(8), 651.351(a). TFSC is tasked with enforcing these provisions to protect public health, safety, and consumer welfare.

2

On July 2, 2025, EPIC filed suit in Travis County District Court, seeking a temporary restraining order and permanent injunctive relief against the Commission. *See* Verified Pet. ¶¶ 73-79. EPIC alleges that the March 26 letter exceeded TFSC's statutory authority and violated its constitutional rights under both the Texas and U.S. Constitutions. *See* Verified Pet. ¶¶ 45-48, 49-68. Defendants timely removed the case to this Court based on federal question jurisdiction. *See* ECF No. 1.

Plaintiff now seeks a temporary restraining order to prevent TFSC from enforcing Chapter 651 against it or from taking any further action related to the March 26 cease-and-desist letter. *See* ECF No. 4. As explained below, the requested relief is unwarranted.

## LEGAL STANDARD

"To obtain a temporary restraining order, a plaintiff must show the following: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that the plaintiff will suffer irreparable injury if injunctive relief is denied; (3) the threatened injury outweighs any damage that the TRO might cause the defendant; and (4) granting the TRO will not disserve the public interest." *Nianga v. Wolfe*, 435 F. Supp.3d 739 (N.D. Tex. 2020); *Garza v. Starr Cnty*, 309 F. Supp.3d 454, 456 (S.D. Tex. 2018); *Ladd v. Livingston*, 777 F.3d 286, 288-90 (5th Cir. 2015). "Such relief is an extraordinary remedy which should only be granted if the movant has clearly carried his burden of persuasion on each of the four factors." *Id.*; *see also PCI Transp. Inc. v. Fort Worth & W. R.R. Co.,* 418 F.3d 535, 545 (5th Cir. 2005) (noting

that the court should not grant preliminary injunctive relief "unless the party seeking it has clearly carried the burden of persuasion on all four requirements"). Under Fifth Circuit precedent, even when a movant satisfies each requirement, the decision to grant an injunction remains within the discretion of the trial court, which should issue them only under exceptional circumstances. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

## ARGUMENT AND AUTHORITIES

### A. EPIC is unlikely to succeed on the merits.

#### 1. Sovereign immunity bars Plaintiff's claim because the challenged action was not *ultra vires*.

In an effort to get around the sovereign immunity bar, and the dismissal of its claim that would result for lack of jurisdiction, Plaintiff attempts to characterize the state conduct at issue as *ultra vires*. This attempt fails, however, and Plaintiff is unlikely to succeed on the merits of its claim because, even when viewed most generously from Plaintiff's perspective, this case represents, at best, the quintessential example of an *authorized but erroneous administrative determination* and *not* the exercise by the agency of an unauthorized power. (The relevant details regarding the applicable regulatory scheme are set out in Section A2, *infra*.) Stated differently, even if the agency were mistaken as a factual and/or legal matter when it announced its belief that Plaintiff had been conducting certain regulated acts without the required license, the fact remains that it falls within the scope of the TFSC's core mission to search out and bring an end to activities that are carried out without the proper licensing/regulation. Even if erroneous, the agency's

determinations vis-à-vis Plaintiff fell within the scope of its subject matter remit and authorization.

One of the Texas Supreme Court's most extensive pronouncements on the limits and scope of the *ultra vires* doctrine can be found in *Hall v. McRaven*, 508 S.W.3d 232, 242-43 (Tex. 2017), and confirms that an erroneous administrative determination is not tantamount to an unauthorized exercise of power:

> When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous. Our intermediate courts of appeals have repeatedly stated that it is not an *ultra vires* act for an official or agency to make an erroneous decision while staying within its authority. Indeed, an *ultra vires* doctrine that requires nothing more than an identifiable mistake would not be a narrow exception to immunity: it would swallow immunity. After all, do not all successful lawsuits require a legal wrong? As important as a mistake may be, sovereign immunity comes with a price; it often allows the "improvident actions" of the government to go unredressed. […] Only when these improvident actions are *unauthorized* does an official shed the cloak of the sovereign and act *ultra vires*. (footnote omitted)

When the heart of a plaintiff's case is that the official's act or decision was somehow "wrong," the act or decision in question cannot rightly be characterized as *ultra vires* on that basis alone. Provided that the official's act or decision fell within the scope of his or her discretion or authority, the fact that it is objectively "wrong," or believed to be, does not open it up to judicial review, much less expose the state to liability. As the Texas Supreme Court has had occasion to clarify, because a claim of *ultra vires* conduct depends on the scope of the state official's authority and not on the quality of that official's decisions, "it is not an *ultra vires* act for an official to make

5

an erroneous decision within the authority granted." *Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018).[1]

Because, as will be seen below, Plaintiff's allegations relate to the purported incorrectness of Defendants' cease and desist letter, and not to the existence of authority to issue such a letter as a legal matter, the sovereign immunity bar remains, and Plaintiff's claim must be dismissed for lack of subject matter jurisdiction.

## 2. EPIC's activities fall within the statutory definition of a "funeral establishment" subject to Texas law.

Plaintiff's central premise—that its conduct is exempt from regulation because it is religious in nature—is not supported by law or fact. The Texas Legislature has defined what constitutes a "funeral establishment" and "funeral directing." EPIC's

---

[1] *See also JRJ Pusok Holdings, LLC v. State*, 693 S.W.3d 679, 687-88 (Tex. App.—Houston [14th Dist.] 2023, pet. granted) ("When, as here, an official has been given authority to make some sort of decision or determination, there is a critical distinction between alleged acts that are truly outside of the official's decision-making authority (which are not shielded by sovereign immunity) and alleged acts that the official merely 'got it wrong' while acting within his authority (which are shielded)."); *KEM Tex., Ltd. v. Texas DOT*, No. 03-08-00468-CV, 2009 Tex. App. LEXIS 4894, at *17-18 (Tex. App.—Austin 2009, no pet.) ("KEM's first theory complains only of actions within appellees' statutory authority – specifically, the merits of their determination that KEM's proposed billboard would not comply with TxDOT's rules regarding outdoor advertising. […] KEM complains only that appellees incorrectly determined that its proposed billboard site failed to comply with TxDOT's rules, not that appellees lacked statutory authority to make that determination"; KEM did not in this regard allege any action falling outside the scope of TxDOT's statutory authority that would allow for the challenged conduct to be deemed *ultra vires*); *Leonard v. City of Burkburnett*, No. 02-22-00266-CV, 2023 Tex. App. LEXIS 9671, at *16 (Tex. App.—Fort Worth Dec. 28, 2023, no pet.) ("The standard for an *ultra vires* act is whether it was done without legal authority, not whether it was correct. Therefore, it is not an *ultra vires* act for an official to make an erroneous decision within the authority granted.").

challenged activities fall squarely within both definitions, and this is so regardless of EPIC's nonprofit status or its particular religious mission.

Chapter 651 of the Texas Occupations Code governs the regulation of funeral services with a view to protecting public health and consumer welfare. It defines a "funeral establishment" as "a place of business used in the care and preparation for burial or transportation of a dead human body" or "any other place in which a person engages in, or represents the person to be engaged in, the business of embalming or funeral directing." Tex. Occ. Code § 651.001(8). A funeral establishment must be licensed to conduct business in Texas. Tex. Occ. Code § 651.351(a). It in turn defines "funeral directing" as "acts associated with or arranging for the disposition of a dead human body, performed by a person for compensation, from the time of first call until … inurnment, interment, or entombment services are complete." Tex. Occ. Code § 651.001(7).

Plaintiff attempts to evade this statutory framework by claiming that it does not seek or accept "compensation." *See* Verified Pet. ¶ 28. But its own Verified Petition contradicts this. EPIC coordinates the preparation and transportation of human remains, including ritual washing, shrouding, and transportation of the body to and from its mosque. *Id* at ¶ 22. In consideration for these services, "monetary contributions toward these costs by the family of the decedent and members of the Muslim community are encouraged and accepted." *Id*.

Critically, what is at issue is not private conduct among family members or religious rites outside of the regulatory framework of Chapter 651. Rather, this case

deals with EPIC's organized provision of services to third parties—members of the public—upon death for compensation. In short, EPIC functions as a centralized hub for organizing and providing funeral services, many of which can only be dispensed by a licensed funeral establishment, including the personal handling of human remains. This is precisely the conduct that Chapter 651 was enacted to regulate.

Moreover, Plaintiff's suggestion that religious motivation insulates it from licensure is incompatible with both the statutory requirements and public safety. There is no religious exemption under Chapter 651. If a secular nonprofit operated out of a warehouse offering services involving the washing and transportation of human remains for compensation, it would be subject to the same enforcement. The statute does not distinguish between secular and religious actors; it distinguishes between licensed and unlicensed providers of funeral services to the public.

Despite Plaintiff's insinuations to the contrary, this case does not concern EPIC's right to perform prayers or religious observances for its deceased congregants — rights that are fully protected. If EPIC were engaged in those religious practices alone, this would not trigger the regulatory framework administered by the TFSC. However, when an organization actively coordinates the care and movement of human remains on behalf of third parties, or otherwise participates in regulated activities, it crosses into territory plainly covered by the Occupations Code. Plaintiff's effort to recast its funeral operations as nothing more than religious rites that fall outside the realm of legitimate state regulation is legally and factually inaccurate.

Properly understood, the provisions in Chapter 651 do not extend to the kinds of religious activities EPIC claims they have been stopped from performing. These include: 1) operating a hotline or otherwise receiving and providing information to/from members within the religious community related to organization of religious rites for a deceased person; 2) helping persons affiliated with the deceased identify and/or contact a licensed funeral establishment or funeral director; 3) notifying members of the community of the community prayers to be performed for the deceased; 4) performing the funeral prayer (Janaza); and 5) helping persons affiliated with the deceased with collecting the death certificate (but without EPIC itself providing or filing the certificate). *See* Verified Pet. ¶ 52.

By contrast, to the extent that EPIC is engaged in activities related to 1) helping persons affiliated with the deceased arrange for the transportation of the body to and from the EPIC mosque or 2) helping persons affiliated with the deceased wash and shroud the body, such activities must be carried out in compliance with applicable public health and safety laws. *Id*. Further, because EPIC was performing these latter activities for compensation or otherwise holding itself out as engaging in the business of funeral directing, such conduct falls within the scope of Chapter 651 and requires proper licensure. *See* Tex. Occ. Code §§ 651.001(6)–(8), 651.351.

Given that certain of EPIC's activities meet the statutory definitions of both "funeral directing" and operation of a "funeral establishment," TFSC acted within its authority in issuing the cease-and-desist letter. Plaintiff's invocation of religious

9

protections does not allow it to escape regulatory oversight relevant to the subject conduct. For these further reasons, Plaintiff is not likely to prevail on the merits.

### 3. The cease-and-desist letter was a lawful, non-final warning within TFSC's statutory authority.

Plaintiff argues that the March 26, 2025 cease-and-desist letter sent by TFSC's former Executive Director constitutes an *ultra vires* act, asserting that the Executive Director lacked the authority to issue it without a proper hearing. This argument mischaracterizes both the nature of the communication and the scope of TFSC's statutory enforcement authority.

The letter in question did not purport to be a judicial injunction, impose penalties, or initiate formal regulatory proceedings. Rather, it was a notice advising Plaintiff that it had been, in TFSC's view, operating a funeral establishment without the required license, in violation of Chapter 651 of the Texas Occupations Code, and requesting that EPIC cease any unlawful funeral service operations.

Chapter 651 contemplates that TFSC will investigate potential violations (e.g., by inspecting facilities under § 651.157) and then encourage voluntary compliance— up to and including seeking judicial relief under § 651.601. Nothing in the statute mandates that the Commission bypass the compliance phase and proceed directly to seek an injunction without first informing the party of perceived violations and attempting to obtain voluntary compliance. The letter acted as a prelude to possible later enforcement through more formal means. Indeed, the statute's structure implies graduated responses: investigate, warn, and only then, if necessary, litigate.

10

Further, this correspondence was factually and procedurally grounded. It was prompted by EPIC's own public descriptions of providing washing, transporting, and preparing bodies—activities that meet the regulatory definitions in § 651.001(7) (funeral directing) and § 651.001(8) (funeral establishment). Defendants' conduct was not arbitrary—it was supported by EPIC's own representations.

In sum, the letter reflects an exercise of TFSC's normal enforcement function under Chapter 651, not an unsupported overreach or power grab. EPIC was informed via the letter of its purported violation and given an opportunity to provide relevant explanations and correct course.

### 4. The enforcement of Chapter 651 does not violate EPIC's constitutional rights.

Plaintiff contends that the Commission's cease-and-desist letter violates both the Texas Constitution (Articles I, §§ 6 and 6-a) and the First Amendment to the United States Constitution. These claims fail for a simple reason: Chapter 651 is a neutral, generally applicable regulation that governs the handling of human remains. It neither targets religion nor burdens the free exercise of faith.

The Supreme Court has long held that a law that is neutral and of general applicability does not violate the Free Exercise Clause, even if the law has the incidental effect of burdening a particular religious practice. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 531, 113 S. Ct. 2217, 2226, 124 L. Ed. 2d 472 (1993). Chapter 651 satisfies that standard. It applies equally to all individuals and entities—religious and secular—that engage in "funeral directing" or operate a "funeral establishment" as defined in § 651.001(7)–(8). The statute does not

11

mention religion, does not single out religious groups, and does not provide individualized exceptions that would render it non-neutral.

What EPIC seeks is not an exemption from a licensing requirement that others may avoid—it seeks a blanket exemption from regulation based solely on its religious identity. But the First Amendment does not compel states to exempt religious actors from public health and safety laws merely because they claim a religious basis for engaging in regulated conduct. Nor does Plaintiff even allege, much less demonstrate, that its religious beliefs are incompatible with obtaining the license that is required to engage in the regulated activities at issue. TFSC's cease-and-desist letter referenced the alleged violations of Chapter 651 regarding EPIC's operation as a funeral home without an establishment license, not any protected religious conduct.

Further, EPIC's claims under the Texas Constitution fare no better. Article I, § 6-a prohibits the government from enacting a rule that "prohibits or limits" certain "religious services." Tex. Const. art. I, § 6-a. The State of Texas does not regulate how EPIC prays, believes, or assembles. It regulates how human remains are handled, without regard to who performs that activity or the reasons for doing so.

In sum, there is no constitutional violation here. Chapter 651 is a valid exercise of the State's regulatory power over the funeral industry. It is applied neutrally, is backed by compelling state interests in public health and safety, and leaves EPIC entirely free to practice and express its religious beliefs so long as it does not engage in unlicensed funeral operations. This Court should therefore reject Plaintiff's state and federal constitutional claims in their entirety.

**B. EPIC fails to show irreparable harm.**

To show immediate and irreparable harm, a plaintiff must demonstrate that it is likely to suffer irreparable harm in the absence of the requested preliminary relief. *Winter v. Nat. Res. Def Council*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). However, a "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001).

**1. The March 26 letter did not impose any enforceable legal restrictions.**

As an initial matter, Plaintiff has not been enjoined or sanctioned in any fashion. TFSC has neither initiated disciplinary proceedings nor imposed fines against EPIC for any alleged violation. The March 26, 2025, letter was a nonbinding communication that advised EPIC of TFSC's view, formed as of that date, that EPIC's activities may constitute unlicensed funeral directing, and that demanded voluntary compliance with the applicable regulations. Plaintiff is under no current legal compulsion. Its claimed injury is anticipatory and speculative, not irreparable.

**2. Plaintiff retains full freedom to engage in religious practices.**

The cease-and-desist letter does not prevent EPIC from conducting religious observances, offering Janaza prayers, gathering in its mosque, comforting bereaved families, or engaging in any other protected spiritual activity. Plaintiff remains free to practice its faith in every meaningful way.

The concern that TFSC raised with Plaintiff had nothing to do with worship – and everything to do with the possible handling, transportation, and preparation of

human remains on behalf of third parties. These latter activities are regulated physical services that naturally raise concerns of public health, safety, and dignity falling within the legitimate sphere of regulation. See Tex. Occ. Code §§ 651.001(7)–(8), 651.351. EPIC's constitutional rights are not burdened simply because EPIC is subject to the same licensure standards as every other entity that performs funeral services for the public. Rather than informing itself about the parameters of the applicable regulatory regime or even requesting clarification from TFSC about what practices were covered by TFSC's cease-and-desist letter, EPIC stopped all activities, including those relating to religious practices that plainly do not fall within the scope of the applicable Texas law. As such, EPIC's alleged harm, assuming it exists in any respect, is wholly self-imposed.

Even if EPIC were to face enforcement in the future (e.g., a license action or a civil suit), it would benefit from the full range of available due process protections, including the opportunity to contest any alleged violation in a hearing with TFSC, as outlined in the statute. That process, not emergency injunctive relief, is the proper forum for addressing potential disputes over TFSC's exercise of its regulatory authority, if any such dispute in fact arises after TFSC issues a final determination.

To conclude, Plaintiff has not demonstrated any immediate, concrete, or legally cognizable harm, much less any harm that is irreparable. The March 26 letter does not warrant emergency judicial intervention. The Court is respectfully requested to deny the motion for temporary restraining order on this basis alone.

**C. The public interest does not support emergency injunctive relief.**

Texas has a long-standing and compelling interest in ensuring that the care, preparation, and disposition of human remains are carried out safely, professionally, and with dignity. That interest is codified throughout Chapter 651 of the Texas Occupations Code, which mandates that anyone engaging in funeral directing or operating a funeral establishment be licensed and subject to professional standards. See Tex. Occ. Code §§ 651.001(7)–(8), 651.351(a).

These regulatory safeguards are not bureaucratic formalities. They exist to protect grieving families, prevent mishandling or neglect, and ensure that funeral services are carried out in accordance with both legal and public health standards. Allowing any unlicensed actor to offer these services, however well-intentioned those actors may be, would undermine the very purpose of the statutory scheme and open the door to serious consequences for public safety and consumer protection.

Enjoining TFSC from enforcing Chapter 651 against an unlicensed operator not only frustrates the Legislature's purpose; it also creates a dangerous precedent: one that effectively allows entities to opt out of public health and safety laws at the mere invocation of a religious label.

As explained in Section B, Plaintiff faces no current legal penalty, enforcement action, or deprivation of religious liberty. TFSC has not barred Plaintiff from praying, assembling, or offering spiritual support to the deceased and their families. The only "harm" Plaintiff claims is the hypothetical possibility that it may have to curtail certain physical activities, such as washing, wrapping, or transporting bodies, should

15

it fail to obtain the appropriate license or otherwise modify its conduct to comply with Chapter 651. Granting an exemption on these facts would afford Plaintiff special treatment rather than equitable relief. And it would place TFSC in the untenable position of selectively enforcing licensing laws based on the religious identity of the provider, which would constitute a clear violation of constitutional neutrality principles.

A TRO here would also run the risk of emboldening other unlicensed entities to ignore Chapter 651, to delay licensure, or to claim exemptions based on loosely defined affiliations. It would chill TFSC's ability to enforce health and safety regulations and invite piecemeal judicial supervision of agency correspondence. On the other hand, denying injunctive relief preserves the *status quo*, allows the agency an opportunity to perform its statutory function, and reserves Plaintiff's right to seek declaratory relief through normal channels if it believes TFSC has overstepped its authority.

Granting the requested relief would greatly disserve the public interest. TFSC acted responsibly and within the law. The public has a right to expect that funeral services be conducted under lawful oversight in the interest of public health and safety. Plaintiff has failed to demonstrate why this expectation should be set aside in this case.

## PRAYER & CONCLUSION

For the foregoing reasons, Defendants Texas Funeral Service Commission and its Executive Director (acting in the official capacity), respectfully request that the

Court deny Plaintiff's Motion for Temporary Restraining Order in its entirety and grant Defendants such other and further relief to which they may be justly entitled.

Dated: July 15, 2025

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief for General Litigation Division

/s/ *Thomas Bevilacqua*
**THOMAS BEVILACQUA**
Texas Bar No. 00793342
Assistant Attorney General
Attorney General of Texas
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 224-2489 | FAX: (512) 320-0667
thomas.bevilacqua@oag.texas.gov

/s/ *Anthony Dolcefino*
**ANTHONY DOLCEFINO**
Attorney-in-charge
Texas Bar No. 24134406
Office of the Attorney General
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
anthony.dolcefino@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS**

17

## CERTIFICATE OF SERVICE

I certify that that on July 15, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.


ERIC A. HUDSON
State Bar No. 24059977
ehudson@terrazaspllc.com
BENJAMIN L. DOWER
State Bar No. 24082931
bdower@terrazaspllc.com

Terrazas PLLC
1001 S. Capital of Texas Highway,
Bldg. L, Suite 250
Austin, Texas 78746
Telephone: (512) 680-3257

ATTORNEYS FOR PLAINTIFF

*/s/ ANTHONY DOLCEFINO*
ANTHONY DOLCEFINO
Assistant Attorney General