UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **EAST PLANO ISLAMIC CENTER (EPIC),** § § § § § § § § § § § § | | |
| *Plaintiff*, | | |
| v. | § | CIVIL ACTION NO. 1:25-cv-1085 |
| **TEXAS FUNERAL SERVICES COMMISSION,** *et al.*, | | |
| *Defendants.* | | |

### DEFENDANTS KRISTIN TIPS' MOTION TO DISMISS

Defendant Kristin Tips, through the Office of the Attorney General of Texas, files this motion to dismiss Plaintiff East Plano Islamic Center ("EPIC")'s claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support, Ms. Tips respectfully offers the following:

### I.  STATEMENT OF THE CASE

This lawsuit challenges a March 26, 2025 cease-and-desist letter issued by Scott Bingaman, former Executive Director of the Texas Funeral Services Commission ("TFSC"), requiring EPIC to halt funeral-related activities allegedly conducted without a license. In its original state court pleading, EPIC sought equitable relief from TFSC and its current Executive Director in his official capacity. After removal to federal court and increased media interest, EPIC amended its complaint to add individual-capacity claims—but not against the obvious candidate. Instead of seeking damages from Mr. Bingaman, who issued the alleged discriminatory cease-and-desist letter, EPIC named Kristin Tips, a TFSC member with no personal involvement in the enforcement action.

The decision to target Ms. Tips individually is as legally untenable as it is inexplicable. EPIC does not allege that Ms. Tips drafted, approved, transmitted, or played any role in Mr. Bingaman's

issuance or enforcement of the cease-and-desist letter. Nor does EPIC allege that Ms. Tips had authority to do so. Instead, EPIC's claims against Ms. Tips hinge entirely on her position at TFSC and a series of text messages and media links she allegedly shared with Mr. Bingaman in May 2025, weeks *after* the cease-and-desist letter was issued. EPIC attempts to frame these innocuous and unrelated private exchanges as anti-Islamic, and thus evidence that Ms. Tips shared the same animus which fueled Mr. Bingaman's enforcement action against EPIC. But even if that were accurate, merely sharing animus is not enough to show causation. Because EPIC fails to allege that Ms. Tips took any action which caused its injuries, it cannot establish Article III standing, state a viable constitutional claim, or overcome qualified immunity. EPIC's claims against Ms. Tips must be dismissed.

## II.     SUMMARY OF EPIC'S ALLEGATIONS

TFSC is a statutorily created body which issues and regulates licenses for funeral directors, funeral establishments, embalmers, and crematories. D.E. 23 ("FAC") ¶ 12. Among other functions, TFSC has disciplinary authority over license-holders and may assess administrative penalties, subject to administrative procedures. *Id.* TFSC is comprised of seven members (including a presiding officer), appointed by the governor, who are responsible for electing an Executive Director. TEX. OCC. CODE. §§ 651.051(a), 601.057, 651.101. At relevant times, Mr. Bingaman was TFSC's Executive Director and Ms. Tips was a TFSC member and its presiding officer. FAC ¶¶ 3, 49.[1]

EPIC is a non-profit organization which, among other functions, conducts Islamic funeral rites for the deceased. *Id.* at ¶¶ 20-25. EPIC asserts that it does not operate as a funeral establishment because it does not receive compensation for funeral-related services, file death certificates, obtain burial transit permits, transport bodies, or dispose of human remains. *Id.* at ¶ 28. For many years, EPIC's funeral practices occurred without state objection. *Id.*

---

[1] Later in its complaint, EPIC alleges that Ms. Tips is EPIC's current Executive Director. FAC ¶¶ 79, 86. Apart from being false, this contradicts EPIC's earlier admissions that Ms. Tips is a TFSC member, and that the role of Executive Director has remained unfilled since Mr. Bingaman's departure on June 18, 2025. *Id.* at ¶¶ 3, 49.

2

On March 26, 2025, Mr. Bingaman issued a letter informing EPIC that it was "operating as a funeral home without an establishment license in violation of TEX. OCC. CODE § 651.351" and ordering it to "cease and desist funeral service operations." D.E. 22-4 ("C&D Letter"). Mr. Bingaman's C&D Letter also stated that the matter was being referred to the Collin County District Attorney for potential criminal enforcement. *Id.* Since receiving the C&D Letter, EPIC has ceased performing funeral rites for its congregants, at least 11 of whom have passed away so far. FAC ¶ 48.

EPIC asserts that Mr. Bingaman sent the C&D Letter not as a legitimate exercise of TFSC's enforcement authority, but rather as a targeted response to EPIC's planned "EPIC City" development, and as part of a broader "witch hunt" by lawmakers against Muslims in Texas *Id.* at ¶¶ 30-47.

Although EPIC admits that the C&D Letter was "formally signed and transmitted" by Mr. Bingman, it alleges that Ms. Tips shared the underlying animus which prompted its issuance. *Id.* at ¶ 50. As evidence of this, EPIC relies solely on a KERA News article which describes uncontextualized private text messages from Ms. Tips to Mr. Bingaman and editorializes their potential meaning. D.E. 22-5. In one exchange, Ms. Tips shared a YouTube video commenting on the EPIC City development and a graphic comparing Jewish, Christian, and Islamic beliefs. D.E. 22-5. Mr. Bingaman responded "not a fan . . . tough to be tolerant when taught hate," and Ms. Tips wrote back in agreement. *Id.* In another exchange, Ms. Tips shared a photograph of Suleman Lelani, the only state legislator who voted against a bill and her husband supported which would no longer allow cemeteries to be built within city or county limits, commenting "you can guess who." *Id.*[2] EPIC construes these exchanges as occurring "at the very same time [TFSC] was pursuing enforcement against EPIC," but every screenshot in the KERA News article is date-stamped in May 2025, several weeks *after* Mr. Bingaman issued the C&D Letter On March 26, 2025. *Id.*; FAC ¶ 50.

---

[2] The KERA News article emphasizes that Rep. Lelani is Muslim, and that the photograph shows him being sworn in on a Quran, but neither Rep. Lalani's religion nor the presence of the Quran are mentioned in the screenshotted text messages between Ms. Tips and Mr. Bingaman. D.E. 22-5.

3

EPIC asserts seven claims in its First Amended Complaint, *all* of which are premised on Mr. Bingaman's C&D Letter and its resulting inability to perform funeral rites for its congregation. FAC ¶¶ 54-91. EPIC's first five claims—which remain from its original pleading—seek declaratory and injunctive relief from TFSC and its current Executive Director in his official capacity for alleged *ultra vires* conduct and violations of the United States Constitution, Texas Constitution, and the Texas Religious Freedom Restoration Act. *Id.* at ¶¶ 54-77. EPIC's newly-added sixth and seventh claims seek damages from Ms. Tips in her individual capacity under 42 U.S.C. § 1983 for alleged violations of the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause. *Id.* at ¶¶ 78-91.[3] For both these claims, EPIC relies exclusively text messages from the KERA News article to establish Ms. Tips' alleged involvement in the enforcement action against it. *Id.*

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal for lack of subject-matter jurisdiction. In determining whether subject-matter jurisdiction exists, a court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (internal quotation omitted).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal when an opposing party fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

---

[3] EPIC's two claims against Ms. Tips are both labeled as First Amendment free exercise claims, but the latter is clearly an equal protection claim and will be treated as such herein. FAC ¶¶ 85-91.

4

*Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. at 556).  Thus, while the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

IV.     **ARGUMENT**

   **A. EPIC lacks standing to sue Ms. Tips because its injuries are not fairly traceable to her alleged actions.**

The Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2.  "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Constitutional standing, like other jurisdictional requirements, is not subject to waiver and demands "strict compliance." *Id.* at 819; *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996).  To have standing, the plaintiff must satisfy three elements: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Tex.*, 562 F.3d 735, 745 (5th Cir 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Here, EPIC fails to establish the second causation element, which requires that its alleged injury must be "fairly traceable to the challenged action of [Ms. Tips], and not the result of the independent action of some third party." *Id.* at 560.  EPIC's only alleged injury—the suspension of funeral rites—flows exclusively from Mr. Bingaman's C&D Letter and the chilling effects thereof. *See* FAC at 1 (alleging that EPIC's historical ability to perform funeral rites "all changed on March 26, 2025, when [TFSC], through [Mr. Bingaman], issued an unlawful cease-and-desist letter to halt its

5

religious practices"), ¶ 46 (alleging that it was Mr. Bingaman who personally "declared that he was making a *criminal* referral to the Collin County District Attorney") (first emphasis added), ¶ 47 (alleging that it was Mr. Bingaman's actions that were discriminatory"), ¶ 48 (alleging that the date Mr. Bingaman sent his C&D Letter was "the last day EPIC has performed funeral rites."), ¶ 75 (alleging that, "[u]nder the cloud of [Mr. Bingaman's C&D Letter] (and the threat of civil or criminal penalties for not-compliance, EPIC had no choice but to stop engaging in its religious funeral services).

 EPIC does not allege that Ms. Tips had any involvement whatsoever in issuing, approving, sending, or authorizing the C&D Letter which caused its injuries. EPIC alleges summarily that Ms. Tips "actively participated in [TFSC]'s handing of the EPIC matter" (*id.* at ¶ 50) and "endorsed [TFSC]'s discriminatory treatment of EPIC" (*id.* at ¶ 81), but unsupported conclusory allegations of this type cannot establish standing. *See*, *e.g.*, *Peters v. St. Joseph Servs. Corp.*, 74 F.Supp.3d 847, 857 (S.D. Tex. 2015) (dismissing claim for lack of standing when allegations of causation were "conclusory and fail[ed] to account for the sufficient break in causation caused by . . . third parties"); *Pennie v. Obama*, 255 F. Supp. 3d 648, 661 (N.D. Tex. 2017) ("Plaintiffs offer only conclusory allegations that the alleged threats were a result of Defendants 'acting in concert.' Such boilerplate allegations of causation are inadequate to demonstrate causation.") (citation omitted).

 Ms. Tips' *only* alleged action is sending private text messages to Mr. Bingaman which EPIC interprets as evincing anti-Muslim bias. FAC ¶¶ 49-51. None of these messages mention TFSC's enforcement action against EPIC, however, much less indicate Ms. Tips' explicit involvement therein. *Id.* Moreover, while EPIC describes these private exchanges as occurring "immediately before and after the March 26, 2025 cease-and-desist letter" (*id.* at ¶ 52), the KERA News article cited by EPIC as the source of its information only mentions messages sent in May 2025, weeks *after* Mr. Bingaman sent the C&D Letter. D.E. 22-5. Thus, even if the private messages could show that Ms. Tips harbored animus towards Muslims (which is hardly as obvious as EPIC insinuates), they cannot show

a causal link between Ms. Tips' actions and the C&D Letter sent by Mr. Bingaman weeks earlier which caused its injuries. And, without that causal link, EPIC lacks Article III standing to sue Ms. Tips. *See, e.g.*, *Zamarripa v. Farrakhan*, No. 3:16-cv-3109, 2019 WL 1015095, at *6 (N.D. Tex. Jan. 15, 2019), *rec. adopted*, 2019 WL 1014938 (N.D. Tex. Mar. 4, 2019) ("In absence of an injury fairly traceable to [Defendant], Plaintiff cannot satisfy the second requirement for Article III standing, and his claims against him should be dismissed for lack of subject matter jurisdiction.").[4]

### B. EPIC fails to allege Ms. Tips' personal involvement in a constitutional violation.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). To establish individual liability under Section 1983, the plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *see also Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (requiring an "affirmative link" between the plaintiff's injury and the conduct of the defendant). The plaintiff must "specify the personal involvement of each defendant ... [and] cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992) (quotation omitted).

Here, just Ms. Tips' lack of personal involvement in the enforcement action against EPIC deprives EPIC of standing to sue her, so too does it defeat EPIC's constitutional claims against her. The gravamen of EPIC's constitutional claims is that Mr. Bingaman's C&D Letter and the threat of

---

[4] Notably, while the timing of the text message between Ms. Tips and Mr. Bingaman further belies causation, it is not dispositive. Even if Ms. Tips sent some of the messages allegedly evincing anti-Muslim animus *before* Mr. Bingaman issued the C&D Letter, the fact remains that nothing in those messages specifically mentioned or endorsed the enforcement action against EPIC which caused its injuries. And at the very least, Mr. Bingman's issuance of the C&D Letter without any direct involvement from Ms. Tips constituted an intervening event which broke the chain of causation. *See Benchellal v. Okonite Co.*, No. 4:22-CV-4435, 2024 WL 1057475, at *5 (S.D. Tex. Mar. 11, 2024) ("[C]ourts within the Fifth Circuit have repeatedly held that intervening acts of third parties break the chain of causation for standing purposes.") (citing cases).

criminal penalties therein were discriminatory and forced EPIC to stop performing religious funeral rites for its congregants. *See* FAC at ¶ 81 (alleging that the C&D Letter violated the Free Exercise Clause because it "selectively targeted EPIC's religious activity"), ¶ 87 (alleging that the C&D Letter violated the Equal Protection Clause because it "was directed exclusively at EPIC and its Muslim congregation, thereby treating EPIC differently from other institutions on the basis of religion."). Nowhere, however, does EPIC allege that Ms. Tips played any role whatsoever in conceiving of, drafting, issuing, sending, or enforcing the C&D Letter, or even that Ms. Tips had authority to do so.

Instead, EPIC argues that Ms. Tips is liable for the effects of Mr. Bingaman's C&D Letter because of "her contemporaneous communications with the [Mr. Bingaman] reflecting hostility toward Islam." FAC ¶¶ 81, 82, 87, 90. As explained in the standing context, however, EPIC fails to establish any causal connection between its injuries and Ms. Tips' text messages or any religious animus which might be imputed therefrom. For one thing, the messages were sent in May 2025, weeks *after* Mr. Bingaman sent the C&D Letter, meaning they could not have possibly induced the enforcement action. D.E. 22-5. Even setting that aside, though, nothing in the messages concern EPIC's alleged operation of an unlicensed funeral establishment or the C&D Letter, much less Ms. Tips' personal involvement in Mr. Bingaman's decision to initiate the enforcement action. *Id.*[5]

Based solely on sending these text messages allegedly evincing anti-Muslim animus, EPIC concludes that Ms. Tips "participated in and endorsed the discriminatory treatment of EPIC." FAC ¶¶ 81, 87. The problem with this conclusion is that individual liability under Section 1983 requires a far higher level of "participation" than merely sharing the animus which fueled someone else's allegedly unconstitutional action. *See Anderson*, 184 F.3d at 443; *Harry v. Colvin*, No. A-13-CA-490-LY,

---

[5] The only message which even mentions EPIC is a YouTube video link Ms. Tips shared with Mr. Bingaman on May 20, 2025 criticizing the EPIC City project. D.E. 22-5 at 2. Even if sharing this link could be construed as Ms. Tips agreeing with the viewpoints expressed therein, which is a long shot, it does not follow that Ms. Tips agreed with (much less influenced) Mr. Bingaman's decision to issue the C&D Letter two months prior.

2014 WL 12642577, at *2 (W.D. Tex. Apr. 21, 2014) (dismissing complaint because it lacked "any allegations that the Commissioner was directly or personally involved in [the challenged agency decision]"). And even assuming Ms. Tips' messages could somehow plausibly be interpreted as "endorsing" Mr. Bingman's enforcement action against EPIC without even mentioning it, mere endorsement of allegedly unconstitutional acts by others is similarly insufficient to establish liability. *See Minix v. Stoker*, 289 F. Appx. 15, 17 (5th Cir. 2008) ("Minix contends that Assistant Warden Clay violated his constitutional rights by endorsing the improper acts of other defendants. This claim fails because Minix has not shown that Clay was personally involved in the acts of which he complains.").[6]

Correctly worried that liability premised solely on unrelated text messages was unlikely to hold up in court, EPIC also argues (or at least strongly implies) that Ms. Tips should be held liable by virtue of her position as TFSC member at the time Mr. Bingaman sent the C&D Letter. *See, e.g.*, FAC at ¶ 81 ("[Ms.] Tips, *through her position* . . . participated in and endorsed the Commission's discriminatory treatment of EPIC."), ¶ 87 ("The [C&D Order], issued through [Mr. Bingaman] *while [Ms.] Tips was serving as a Commission member*, expressly forbade EPIC's performance of Islamic burial rites."), ¶ 90 ("[Ms.] Tips—*through . . . her position as a member of the Commission*—participated in and endorsed that discriminatory course of action.") (emphasis added).

While EPIC is careful not to explicitly mention vicarious liability, that is exactly the type of liability it seeks to impose. EPIC wants the Court to find that, because Ms. Tips is a TFSC member, she is responsible for the effects of Mr. Bingaman's independent action of sending the C&D Letter. Such a finding would be incongruous with decades of precedent limiting liability under Section 1983 to individual conduct. *See Murphy*, 950 F.2d at 292 n.7; *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *Iqbal*, 556 U.S. at 675; *Ford v. Anderson Cty.*, 102 F.4th 292, 320-21 (5th Cir. 2024). Moreover,

---

[6] To the extent that EPIC argues that Ms. Tips' text messages and the anti-Muslim bias allegedly evinced therein *alone* violated the Constitution separate and apart from Mr. Bingaman's D&E Letter, that argument again fails on causation grounds because EPIC does not allege any injuries directly attributable to the messages themselves.

even if vicarious liability were permitted, it is undercut by EPIC's allegation that Mr. Bingaman acted *ultra vires* in issuing the C&D Letter. *See* FAC ¶ 55-56. If Mr. Bingaman acted "without legal authority" in issuing the letter (*id.*), then Ms. Tips cannot be vicariously responsible for its effects.

In sum, neither Ms. Tips' private text exchanges with Mr. Bingaman nor her position as TFSC member are sufficient—independently or combined—to impute her individual liability under Section 1983. If the Court determines that the enforcement action against EPIC was unconstitutional, the only possible individual who could be held individually liable for that violation would be Mr. Bingaman, who EPIC admits was the sole person who signed and sent the D&E letter which caused its injuries. FAC ¶ 50. The reason EPIC decided to sue Ms. Tips instead of Mr. Bingaman is unclear, but the necessity of dismissing EPIC's claims against Ms. Tips is not. *See Hicks v. Tarrant Cnty. Sheriff's Dep't*, 352 F. Appx. 876, 877 (5th Cir. 2009) ("Hicks failed to allege that [the Commissioners] were personally involved in the alleged constitutional violations. . . Therefore, the district court did not err when it dismissed Hicks's claims against the Commissioners in their individual capacities.").

### C. EPIC fails to overcome Ms. Tips' qualified immunity.

Qualified immunity shields state officials sued in their individual capacities from both suit and liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The scope of qualified immunity is broad—it "protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once qualified immunity has been asserted, the burden shifts to the plaintiff to show that it does not bar recovery. *See Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). To meet this burden, the plaintiff must both "(1) allege facts that make out a violation of a constitutional right, and (2) show that the right at issue was clearly established at the time of the defendants' alleged misconduct." *Espinal v. City of Houston*, 96 F.4th 741, 748–49 (5th Cir. 2024) (quotation omitted). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Here, EPIC cannot overcome the first qualified immunity threshold because, as described above, it fails to allege Ms. Tips' personal involvement in any constitutional violation. *See Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024) ("A plaintiff seeking to overcome qualified immunity must specifically identify each defendant's personal involvement in the alleged wrongdoing.") (quotation omitted); *Youmans v. Torres*, 828 F. Appx. 212, 213 (5th Cir. 2020) ("Youmans's complaint failed to allege sufficient facts showing Sheriff Torres's personal involvement in the alleged constitutional violation and negating the sheriff's defense of qualified immunity."); *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (describing personal involvement as "a prerequisite" to overcoming qualified immunity); *Walters v. Livingston*, No. A-12-CA-1072, 2014 WL 4546819, at *11 (W.D. Tex. Sept. 12, 2014), *aff'd*, 642 F. Appx. 416 (5th Cir. 2016) ("[T]he defendants [plaintiff] sues lack the requisite personal involvement to overcome their qualified immunity protection."). Resultantly, the Court's inquiry into the individual liability of Ms. Tips under Section 1983 should end here. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

But even if the Court determines that EPIC stated a claim against Ms. Tips, she would still be entitled to qualified immunity because her alleged actions did not violate any clearly established constitutional right. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation and alteration omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quotation omitted). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). EPIC cannot identify any binding precedent placing it "beyond debate" that a state official is liable for the discriminatory enforcement

11

action of another state official simply because the two shared private text messages evincing animus towards the same group. Nor can EPIC identify any binding precedent placing it "beyond debate" that such private messages alone violate the Constitution. Absent such precedent, Ms. Tips' qualified immunity remains intact.

## VI. CONCLUSION

Defendant Kristen Tips respectfully request that the Court dismiss all of Plaintiff's claims against her pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**BRIANA M. WEBB**
Chief, Law Enforcement Defense Division
Co-Counsel
Texas State Bar No. 24077883
Briana.webb@oag.texas.gov

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Attorney-In-Charge
Texas State Bar No. 24126986
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080

**COUNSEL FOR DEFENDANT KRISTIN TIPS**

## CERTIFICATE OF SERVICE

I, **MICHAEL J. CALB**, Assistant Attorney General of Texas, do hereby certify that on November 20, 2025, a true and correct copy of the above and foregoing has been served on all counsel of record via the Court's electronic filing system.

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General