UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EAST PLANO ISLAMIC CENTER (EPIC), | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 1:25-cv-1085 |
| TEXAS FUNERAL SERVICE COMMISSION, *et al.,* | § § § § | |
| *Defendants.* | § § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Defendant the Texas Funeral Service Commission ("TFSC"), TFSC's Executive Director (in the official capacity), and TFSC member Kristin Tips (in her individual capacity), through the Office of the Attorney General of Texas, file this response in opposition to Plaintiff East Plano Islamic Center ("EPIC")'s motion for leave to file a second amended complaint. D.E. 31.

**I.    STATEMENT OF THE CASE**

This lawsuit challenges a March 26, 2025 cease-and-desist letter ("C&D Letter") issued by Scott Bingaman, former TFSC Executive Director, that EPIC claims required it to halt funeral-related activities allegedly conducted without a license. In its original state court pleading, EPIC sought equitable relief from TFSC and its Executive Director in the official capacity (together, the "Agency Defendants"). D.E. 1-3. After removal to federal court, EPIC amended its complaint to add individual-capacity claims against Kristin Tips, TFSC's Presiding Officer. D.E. 23 ("FAC").

Ms. Tips filed a motion to dismiss EPIC's FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). D.E. 29 ("MTD"). While Ms. Tips' MTD remains pending, EPIC now seeks

leave to amend its complaint *again*, purportedly to "cure[] the putative pleading defects raised by the pending [MTD]." D.E. 31 at 1. EPIC's proposed amendment—D.E. 31-1 ("Proposed SAC")—does no such thing. Even accepting all new allegations as true, EPIC's Proposed SAC fails as a matter of law to establish (1) an injury traceable to any conduct by Ms. Tips sufficient to confer standing, (2) personal involvement sufficient to state a claim under 42 U.S.C. § 1983, or (3) a violation of clearly established law sufficient to overcome qualified immunity. Because the Proposed SAC would be futile, and would cause prejudice and undue delay for all Defendants, leave to amend should be denied.

## II.    SUMMARY OF NEW ALLEGATIONS IN EPIC'S PROPOSED SAC

EPIC's Proposed SAC adds several pages of allegations attempting to connect Ms. Tips to the March 26, 2025 C&D Letter issued by Mr. Bingaman which underlies EPIC's claims in this case. As described below, none of these allegations, individually or together, create the required link.

### A.  Allegations concerning Ms. Tips' title and alleged supervisory role.

The Proposed SAC now alleges that Ms. Tips served on TFSC for more than eight years and became its Presiding Officer in May 2024; exercised "de jure and de facto supervisory control" over the TFSC's Executive Director; and had influence over how the Executive Director responded to matters receiving political or public attention. Proposed SAC p.2, ¶¶ 4, 50, 56. However, the SAC does *not* allege that Ms. Tips possessed statutory authority to issue enforcement letters, initiate criminal referrals, or unilaterally direct enforcement actions.

### B.  Allegations of communications between Ms. Tips and Mr. Bingaman.

The Proposed SAC alleges, summarily, that discovery has uncovered emails between Ms. Tips and Mr. Bingaman in which Ms. Tips forwarded or commented on materials relating to EPIC and broader "Sharia law" rhetoric and expressed concern about potential political fallout if TFSC failed to act with respect to EPIC. Proposed SAC ¶¶ 51-56. Ms. Tips also allegedly communicated with Mr. Bingaman around the time the C&D Letter was sent, giving him "direction, instruction, edits,

approvals, and strategic guidance on enforcement matters, draft orders, press releases, investigations, legislative responses, and interactions with regulated entities." *Id.* at ¶ 57. And she allegedly "directly supervised and approved multiple cease-and-desist actions involving *other entities*." *Id.* at ¶ 58.

On the day the C&D Letter was sent, EPIC alleges Ms. Tips responded to a general (not-EPIC-specific) lobbyist inquiry by telling Mr. Bingman to "hold tight" and instructing him that she was "coordinating with the Governor's office regarding the enforcement activity." *Id.* at ¶ 61. EPIC also alleges that, the same day, Ms. Tips was "bbc'ed" on an email to another TFSC employee regarding the investigation." *Id.* at ¶ 62. Notably, the Proposed SAC does not allege that any of these emails instructed Mr. Bingaman to issue the C&D Letter to EPIC, nor that they constituted an order, directive, or formal TFSC action.

## C. Allegations of anti-Muslim animus.

The Proposed SAC adds new allegations bolstering its prior claims that Ms. Tips harbored or expressed hostility toward Islam or Muslim organizations in private communications, and that such animus was revealed through tone, phrasing, and reactions. Proposed SAC ¶¶ 61–64. However, the Proposed SAC does not allege that Ms. Tips made any *public* statements evincing animus towards EPIC or Islam, or that she took any official action based on such animus.

## D. Allegations that Ms. Tips encouraged and supported scrutiny of EPIC, and was the "driving force" behind the enforcement action.

Finally, the Proposed SAC alleges that Ms. Tips allegedly "encouraged scrutiny" of EPIC in light of political pressure from elected officials and was a "driving force" behind TFSC's enforcement actions against EPIC. Proposed SAC p. 2, ¶¶ 56-64. However, all of these allegations are conclusory labels unsupported by specific factual allegations showing *how* Ms. Tips was involved in the EPIC enforcement action. Notably, the SAC still does not allege that Ms. Tips authored, signed, approved, or issued the C&D Letter; possessed statutory authority to issue or veto the C&D Letter; or affirmatively directed Mr. Bingaman to issue the C&D Letter.

3

### III.   STANDARD OF REVIEW

Leave to amend a pleading "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, "leave to amend is in no way automatic."  *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).  In deciding whether to grant leave to amend, district courts consider the following five factors: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party in allowing the amendment; and (5) futility of the amendment.  *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).

### IV.   ARGUMENT

#### A.  EPIC's proposed amendment is futile because it does not cure any of the pleading defects in its FAC.

"Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile."  *Marucci*, 751 F.3d at 378.  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."  *Id.*  Similarly, an amendment is futile if it would fail to survive a 12(b)(1) motion for lack of subject matter jurisdiction.  *See Wiggins v. La. State Univ.*, 710 F. Appx. 625, 627 (5th Cir. 2017).  Here, Ms. Tips' MTD outlines the myriad pleading deficiencies in EPIC's FAC which warrant dismissal of the claims against her under both Rule 12(b)(1) and Rule 12(b)(6).  D.E. 28.  Because EPIC's Proposed FAC would not cure these defects, allowing that amendment would be futile.

##### 1.   The Proposed SAC still fails to establish standing because it does not allege injuries fairly traceable to Ms. Tips' actions.

Article III standing requires a plaintiff to plead facts indicating a causal connection between its injury and the defendant's conduct.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Even at the pleading stage, the injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Id.* at 560; *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976); *Calif. v. Tex.*, 593 U.S. 659, 675, (2021).

4

EPIC does not satisfy the causation element as to Ms. Tips.   Like EPIC's FAC, its Proposed SAC repeatedly and expressly attributes its injury to a single act: the March 26, 2025 C&D Letter issued by Mr. Bingaman (which, moreover, was subsequently clarified through a detailed TFSC letter dated July 16, 2025 (D.E. 12-1).  Proposed SAC ¶¶ 29, 45-46.  EPIC alleges that TFSC, "through its Executive Director," issued the C&D Letter, and that under the threat of civil and criminal enforcement, EPIC "had no choice but to stop engaging in its religious funeral services." *Id.* at ¶ 93. As pleaded, these allegations foreclose any inference that Ms. Tips caused EPIC's injury.

EPIC now summarily alleges that Ms. Tips wielded control over Mr. Bingaman's decision-making and was "the driving force" behind the enforcement action (*id.* at p. 2, ¶ 61), but unsupported conclusory allegations of this type cannot establish standing.  *See, e.g.*, *Peters v. St. Joseph Servs. Corp.*, 74 F.Supp.3d 847, 857 (S.D. Tex. 2015) (dismissing claim for lack of standing when allegations of causation were "conclusory and fail[ed] to account for the sufficient break in causation caused by . . . third parties"); *Pennie v. Obama*, 255 F. Supp. 3d 648, 661 (N.D. Tex. 2017) ("Plaintiffs offer only conclusory allegations that the alleged threats were a result of Defendants 'acting in concert.' Such boilerplate allegations of causation are inadequate to demonstrate causation.").

Ms. Tips' only alleged actions were (1) sending text messages to Mr. Bingaman allegedly evincing anti-Muslim bias, (2) approving *other* enforcement actions, (3) "maintain[ing] near-daily, real-time supervisory communication with Bingaman via phone, text, and email" in which she "gave direction, instruction, edits, approvals, and strategic guidance on enforcement matters, draft orders, press releases, investigations, legislative responses, and interactions with regulated entities;" (4) telling Mr. Bingaman, on the day the C&D Letter was sent, that she was "coordinating with the Governor's office regarding the enforcement activity;" and (5) being "bcc'ed" on an email from a staff attorney regarding the EPIC investigation.   Proposed SAC ¶¶ 57-62, 65-67.  While these alleged actions perhaps show Ms. Tips' knowledge and support of the enforcement action against EPIC, they

5

do not establish a causal link between Ms. Tips and Mr. Bingaman's actual decision to issue the C&D Letter which caused EPIC's alleged injuries. Thus, EPIC's Proposed SAC would not cure the lack of standing and should be rejected as futile. *See, e.g., Hoskins v. Baker*, No. CV H-22-808, 2022 WL 15524627, at *2 (S.D. Tex. Oct. 27, 2022) ("As the jurisdictional defects in the complaint cannot be corrected, amendment would be futile.").

> ### 2. The Proposed SAC still fails to allege adequate personal involvement by Ms. Tips to state a constitutional violation.

For the same reasons EPIC's new allegations against Ms. Tips fail to establish standing, they also fail to show her personal involvement in any constitutional violation, which is a prerequisite for liability under Section 1983. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).

Because the alleged constitutional violations in this case all stem entirely from the contents of the C&D Letter, EPIC must show an "affirmative link" between that letter and Ms. Tips's actions. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). EPIC fails to do so. While EPIC doubles down on its generalized assertions of Ms. Tips' participation in TFSC's affairs and insinuates that she was micromanaging Mr. Bingaman's actions in various ways, it still does not allege that Ms. Tips drafted, reviewed, approved, authorized, or transmitted the C&D Letter, which it admits was "formally signed and transmitted" by Mr. Bingaman. Proposed SAC ¶ 59. Absent such allegations, EPIC cannot establish Ms. Tips' individual-capacity liability for the alleged injuries caused by the C&D Letter.

EPIC's reliance on Ms. Tips' mere status as a TFSC member fares no better. While EPIC alleges that Ms. Tips' position allowed her to exercise "direct supervisory authority and operational control over [Mr. Bingman]" (*id.* at ¶ 51), the regulations governing TFSC confer no such authority on an individual TFSC member. *See generally* TEX. OCC. CODE Ch. 651. Nor does EPIC allege that Ms. Tips had legal authority to issue enforcement letters, initiate criminal referrals, or bind the TFSC unilaterally. No—only Mr. Bingman had that authority, and only he could be properly sued in his

individual capacity for the effects of yielding that authority.  EPIC's inexplicable decision to sue Ms. Tips in lieu of Mr. Bingaman should preclude it from obtaining an individual-capacity reward.

And there's another problem.  EPIC alleges that Mr. Bingaman acted "*ultra vires*" by issuing the C&D Letter (*see* Proposed SAC ¶¶ 72–73), which by definition means that he acted "without any authority whatsoever."  *Apter v. Dep't of Health & Human Serv.*, 80 F.4th 579, 586 (5th Cir. 2023).  If that's true, then how could Ms. Tips be responsible for the effects of the letter by virtue of *her* legal authority over Mr. Bingaman?  EPIC can't have it both ways.  Either Mr. Bingaman acted outside the scope of his authority in issuing the C&D Letter, in which case Ms. Tips' alleged authority over him is irrelevant, or Mr. Bingaman acted within the scope of his authority, in which case Ms. Tips' alleged authority might be relevant—if it weren't for Section 1983's prohibition of supervisory liability.  *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).  Either way, Ms. Tips cannot be held liable, further evidencing that EPIC's Proposed SAC is an exercise in futility.

### 3.    The Proposed SAC still fails to overcome Ms. Tips' qualified immunity.

Qualified immunity shields state officials sued in their individual capacities from both suit and liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The scope of qualified immunity is broad—it "protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Once qualified immunity has been asserted, the burden shifts to the plaintiff to show that it does not bar recovery. *See Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).  To meet this burden, the plaintiff must both "(1) allege facts that make out a violation of a constitutional right, and (2) show that the right at issue was clearly established at the time of the defendants' alleged misconduct." *Espinal v. City of Houston*, 96 F.4th 741, 748–49 (5th Cir. 2024) (quotation omitted).  "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Here, EPIC's Proposed SAC fails to overcome the first qualified immunity threshold because,

as described above, it fails to allege Ms. Tips' personal involvement in any constitutional violation. *See Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024) ("A plaintiff seeking to overcome qualified immunity must specifically identify each defendant's personal involvement in the alleged wrongdoing.") (quotation omitted); *Youmans v. Torres*, 828 F. Appx. 212, 213 (5th Cir. 2020) ("Youmans's complaint failed to allege sufficient facts showing Sheriff Torres's personal involvement in the alleged constitutional violation and negating the sheriff's defense of qualified immunity."); *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (describing personal involvement as "a prerequisite" to overcoming qualified immunity); *Walters v. Livingston*, No. A-12-CA-1072, 2014 WL 4546819, at *11 (W.D. Tex. Sept. 12, 2014), *aff'd*, 642 F. Appx. 416 (5th Cir. 2016) ("[T]he defendants [plaintiff] sues lack the requisite personal involvement to overcome their qualified immunity protection.").

But even if the Court determines that EPIC's Proposed SAC adequately alleges Ms. Tips's involvement in a constitutional violation, qualified immunity would still preclude individual-capacity liability because TFSC's enforcement action against EPIC did not violate any *clearly established* constitutional right. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation and alteration omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quotation omitted). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).[1]

---

[1] EPIC cites to *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), an Eighth Amendment case, for the proposition that "qualified immunity does not protect officials who violate 'obvious' constitutional commands, even in the absence of a case with the same facts." D.E. 38 at 15. But, as EPIC admits, the Fifth Circuit has explicitly declined to extend this "obvious" exception outside the Eighth Amendment context. *Id.* at n. 1 (citing cases). Moreover, even if *Hope* applied to religion cases, EPIC's allegations hardly present one of the few "rare cases" in which the alleged constitutional violation is so obvious that analogous case law is not needed. *Garcia v. Bermea*, No. 23-50871, 2024 WL 3326088, at *1 (5th Cir. July 8, 2024).

EPIC cannot identify any binding precedent placing it "beyond debate" that TFSC's enforcement action against it violates the First Amendment's Free Exercise Clause or the Fourteenth Amendment's Equal Protection Clause. EPIC's Proposed SAC and response to Ms. Tips' MTD cite to various cases, but none are sufficiently analogous to overcome qualified immunity.

EPIC first relies on *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, which involved municipal ordinances that were facially and operationally crafted to suppress a specific religious practice, with explicit discriminatory exemptions and a legislative record demonstrating targeting. 508 U.S. 520, 534-42 (1993). The ordinances in *Lukumi* which the Supreme Court held violated the Establishment Clause bear little resemblance to a single cease-and-desist letter enforcing a generally applicable licensing statute. The *Lukumi* decision did not clearly establish that an enforcement action becomes unconstitutional whenever a plaintiff alleges religious animus, particularly where (as here) the challenged action lacks the structural features that drove the court's analysis.

EPIC next relies on *Islamic Center of Mississippi, Inc. v. City of Starkville*, 840 F.2d 293 (5th Cir. 1988). There, the Fifth Circuit reviewed a developed record showing that a city treated a Muslim congregation's land-use application differently from churches and gave effect to community hostility. *Id.* at 301-03. Although the zoning ordinances at issue were facially neutral, the plaintiff Muslim organization was able to prove a First Amendment violation by showing that churches in similar areas were not able subject to the same restrictions, and that it was the only religious group which was ever denied an exception to the ordinances. *Id.* at 296-303. Here, EPIC's Proposed SAC contains no allegation that TFSC is allowing non-Muslim organizations to perform the type of unlicensed funeral rites which prompted the C&D Letter, much less that EPIC is the only organization being denied an exception to TFSC's licensure requirements.[2] *Starkville* is therefore inapposite.

---

[2] EPIC does not allege, as the plaintiff proved in *Starkville*, that non-Muslim groups are actually being allowed to conduct the same violative activity without any enforcement action being taken.

The remainder of the Fifth Circuit and Supreme Court cases cited by EPIC articulate general constitutional principles, but none comes close to clearly establishing that issuing a cease-and-desist letter under a neutral licensing statute, on the allegations here, violates the law. *See, e..g., Armstrong, Oyler v. Boles*, 368 U.S. 448 (1962), *Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir. 1996), *Bryan v. City of Madison*, 213 F.3d 267 (5th Cir. 2000), *Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000), *Boyd v. McNamara*, 74 F.4th 662 (5th Cir. 2023); *see generally al–Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.").

In sum, EPIC has not identified Supreme Court or Fifth Circuit precedent that clearly establishes—beyond debate—that issuing the March 26, 2025 C&D Letter under a neutral occupational licensing statute violated the Constitution. Thus, even assuming personal involvement by Ms. Tips, EPIC cannot overcome qualified immunity and allowing the amendment would be futile.

## B. Allowing the amendment would cause undue delay and prejudice all Defendants.

In addition to futility, the Court should deny EPIC's motion because it would cause undue delay and prejudice Defendants—especially Ms. Tips, whose assertion of qualified immunity remains pending. *See Rosenzweig*, 332 F.3d at 864 (undue delay and prejudice are grounds to deny amendment).

First, granting EPIC's motion would cause undue delay. EPIC has already amended once and did so after months of litigation and after removal to federal court. The operative facts EPIC now seeks to add are not newly discovered; by EPIC's own account, they concern internal agency communications and events that allegedly occurred before or contemporaneously with the March 26, 2025 C&D Letter.[3] Yet EPIC waited to seek amendment until after Ms. Tips filed a motion to dismiss identifying specific (incurable) pleading defects. Courts routinely find undue delay where, as here, a

---

[3] While EPIC' Proposed SAC mentions a couple of emails which were produced after Ms. Tips filed her MTD, the vast majority of the new allegations could have been included when EPIC originally amended its complaint. Indeed, EPIC admits that it currently seeks further amendment not to supplement with newly-acquired information, but rather to "cure[] the putative pleading defects raised by the pending [MTD]." D.E. 31 at 1.

plaintiff seeks amendment only in reaction to a dispositive motion rather than based on newly available information. *See, e.g., Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999).

Second, the proposed amendment would unduly prejudice all Defendants by requiring the case to essentially start from scratch, more than five months after it was originally filed. If the amendment is granted, the Agency Defendants would have to re-answer the claims against them, and (presuming Ms. Tips files another motion to dismiss), again seek a stay of discovery on that basis. But the prejudice to Ms. Tips would go far beyond that. Through its Proposed SAC, EPIC seeks to transform a case that, as currently pleaded, turns on a single enforcement letter into one alleging a wide-ranging course of conduct, supervisory control, and behind-the-scenes direction—allegations that would materially expand the scope of discovery, require substantial additional motion practice, and fundamentally alter the theory of individual liability.

The prejudice Ms. Tips' would suffer from amendment is especially acute given her pending assertion of qualified immunity. Because qualified immunity is an immunity from suit, the Fifth Circuit has repeatedly emphasized that courts should resolve its applicability at the earliest possible stage and should not permit amendment which attempts to artfully plead around the defense. *See Cockrell v. Cates*, No. 97-60068, 1997 WL 450200, at *1 (5th Cir. 1997) (refusing to permit "artful pleading" from "prevent[ing] these defendants from asserting qualified immunity"); *see also Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Allowing amendment here would defeat the core purpose of qualified immunity by forcing Ms. Tips to endure precisely the type of unnecessary protracted litigation burden that the doctrine is designed to prevent. *See Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022).

## VI.    CONCLUSION

For the reasons described above, the Court should deny EPIC's motion for leave to file a Second Amended Complaint and proceed to resolve Ms. Tips's pending morion to dismiss.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**BRIANA M. WEBB**
Chief, Law Enforcement Defense Division
Co-Counsel
Texas State Bar No. 24077883
Briana.webb@oag.texas.gov

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Attorney-In-Charge
Texas State Bar No. 24126986
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080

**COUNSEL FOR DEFENDANT KRISTIN TIPS**

*/s/ Thomas Bevilacqua*
**THOMAS BEVILACQUA**
Attorney-in-Charge
Texas Bar No. 00793342
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 224-2489 / Fax (512) 320-0667
thomas.bevilacqua@oag.texas.gov

**SCOTT D. SMITH**
Texas Bar No. 24011874
Assistant Attorney General
scott.smith@oag.texas.gov

**COUNSEL FOR DEFENDANTS TEXAS
FUNERAL SERVICES COMMISSION AND TEXAS
FUNERAL SERVICES COMMISSION EXECUTIVE
DIRECTOR, IN THE OFFICIAL CAPACITY**

12

## CERTIFICATE OF SERVICE

I, **MICHAEL J. CALB**, Assistant Attorney General of Texas, do hereby certify that on December 19, 2025, a true and correct copy of the above and foregoing has been served on all counsel of record via the Court's electronic filing system.

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General