IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EAST PLANO ISLAMIC CENTER (EPIC), | § | |
|    *Plaintiff* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | Civil Action No. 1:25-cv-1085 |
| | § | |
| TEXAS FUNERAL SERVICES | § | |
| COMMISSION, *et al.* | § | |
|    *Defendants* | § | |

### REPLY IN SUPPORT OF PLAINTIFF'S OPPOSED MOTION FOR LEAVE TO FILE PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants ask this Court to deny EPIC's motion for leave to amend, arguing (1) that amendment is futile; and (2) that allowing the proposed amendment would impose undue delay and prejudice on all Defendants. Dkt. #43 at 4–11. Because neither of these arguments have merit, leave to amend should be granted.

### I.    ARGUMENTS & AUTHORITIES

#### A.    Amendment is not futile.

Amendment is not futile because the proposed Second Amended Complaint would, if filed, overcome Defendants' would-be dispositive motion arguments.[1] The proposed pleading includes detailed factual allegations regarding (1) Presiding Commissioner Tips' enormous authority and influence over Executive Director Bingaman, including on the very day he issued the cease-and-desist ("C&D") order to EPIC; (2) how she wielded her influence, directing Bingaman's actions,

---

[1] Defendants' response to EPIC's motion for leave to amend previews the standing, failure-to-state a claim, and qualified immunity arguments that would normally be raised in a motion to dismiss. *See* Dkt. #43 at 4–10. Even excluding the caption, signature block, and certificates, Defendants' response exceeds the limit 10-page limit for responses to non-dispositive motions. *Compare* Dkt. #43 at 1–13, *with* W.D. TEX. L.R. CV-7(e)(3). And EPIC has only *five* pages to rebut the arguments rather than the 20 pages allotted for a dispositive-motion Response. *See* W.D. L.R. CV-7(e)(3), (f)(3). While Defendants are certainly within their rights to argue futility, these proceedings would benefit from the more comprehensive treatment afforded by dispositive motion practice.

including whether, when, and how to issue C&D orders; and (3) regarding her active participation in TFSC's handling of the EPIC matter, including in the *hours* immediately before and immediately after the C&D order's issuance—both internally with agency staff and externally with the Governor's Office.[2] Dkt. #31-1 at 22–27 (¶¶49–64). The proposed pleading also includes detailed factual allegations regarding Presiding Commissioner Tips' communications with Bingaman during these same events, in which she shared a video suggesting that EPIC planned to "breed terrorists," told Bingaman that she was "not a fan" of Muslims because they are "taught hate," and expressed disapproval of a Muslim state legislator taking his oath of office on a Muslim holy text. *Id.* at 27–29 (¶¶65–69).

### 1.      Standing.

The proposed amendment alleges facts sufficient to demonstrate, at minimum, the requisite "indirect causal relationship sufficient for standing," which requires merely that the defendant's conduct be "one of multiple contributing causes." *See Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 236–37 (5th Cir. 2025). "Even an ***uncertain or indirect*** causal connection may suffice at the pleading stage." *Id.* at 237 (emphasis added). The proposed amended complaint's factual content is more than meets this "low causation bar," and thus the amendment is not futile with regards to standing. *See id.*

### 2.      Personal Involvement.

The proposed pleading's factual content allows this Court to draw the reasonable inference that Presiding Commissioner Tips had a discriminatory animus against Muslims. *See* Dkt. #31-1

---

[2] The pleadings also allege that the Governor began posting hostile Tweets about EPIC and "Sharia law" one month before TFSC issued the C&D order and continued Tweeting about EPIC, "Sharia law," and "[a] dozen stage agenc[y]" investigations into EPIC in the days preceding and following TFSC order's issuance. Dkt. #31-1 at 15–18 (¶¶41–41).

at 27–30 (¶¶65–69).  Arguing otherwise, Defendants note that, although Defendant Tips may have spoken disparaging about Islam in private, she never "made any *public* statements evidencing animus towards EPIC or Islam"—as though private bigotry not intended for public consumption were somehow *less* revealing of true sentiment than a carefully-crafted press release.  *See* Dkt. #43 at 3 (emphasis in original).  Contrary to Defendants' suggestion, this Court must draw reasonable inferences in the light most favorable to EPIC as non-movant.  *See Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

The proposed pleading's factual content also allows this Court to draw the reasonable inferences that Presiding Commissioner Tips was personally involved in the decision to issue the C&D order to EPIC.  Dkt. #31-1 at 22–27 (¶¶49–64).  Defendants contend that, to state a claim against Presiding Commissioner Tips, she must have either "reviewed, approved, authorized, or transmitted the C&D Letter."  Dkt. #43 at 6–7.  Defendants provide no authority for the proposition that this *specific* form of participation is required for liability, even if the official is otherwise "personally involved in the constitutional violation or commit[s] acts [that] are causally connected to the constitutional violation alleged."  *See Magnolia Island Plantation, LLC v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (internal quotes omitted).  And the factual allegations *do* create the reasonable inference that Presiding Commissioner Tips reviewed, approved, and authorized the C&D Letter.  The proposed pleading alleges:

- Bingaman submitted draft orders to her on a regular basis, Dkt. #31-1 at 23 (¶52), sought her permission before taking actions and expressly deferred to her judgment on enforcement issues, *id.* at 23–24 (¶53), and "**did not issue cease-and-desist notices without her involvement**," *id.* at 24 (¶58) (emphasis added);

- Presiding Commissioner Tips "personally edited enforce letters," *id.* at 24 (¶54), maintained "near-daily real-time supervisory communication with Bingaman" including regarding "multiple cease-and-desist actions" in "the period immediately surrounding the C&D Letter to EPIC," *id.* at 25 (¶57), issued "direct instructions regarding agency posture, messaging, and

3

enforcement strategy" the day before the C&D order's issuance; was engaged in an ongoing conversation with Bingaman regarding TFSC's forthcoming actions against EPIC, with several specific examples, *see id.* at 25–26 (¶59); and

- Hours before the TFSC issued the C&D order to EPIC, Presiding Commissioner Tips directed Bingaman to "hold tight" on proceeding with enforcement actions while she coordinated with the Governor's office regarding TFSC enforcement activity, *id.* at 26–27 (¶61) and, hours after TFSC issued the order to EPIC, she was "bcc"ed on a staff attorney's email regarding the EPIC investigation, which "cc"ed Bingaman, indicative of her active but behind-the-scenes role, *id.* at 27 (¶62).

As for Defendants' argument that Presiding Commissioner Tips cannot be liable because EPIC alleges that Bingaman acted *ultra vires*, Dkt. #43 at 6, this ignores the possibility that both officials acted unlawfully, but that the authority she wielded over Bingaman nevertheless contributed to constitutional violations. The proposed Second Amended Complaint states a claim.

### 3.    Qualified Immunity.

Finally, Defendants argue that the proposed pleading is futile based on qualified immunity ("QI"). This argument merits greater briefing than a five-page reply supporting a non-dispositive motion permits, *see* W.D. L.R. CV-7(f)(3), but a few points bear mention. *First*, "it is not necessary that 'the very action in question has previously been held unlawful.'" *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 326 (5th Cir. 2023) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Instead, there can be notable factual distinctions between the precedents relied on . . . so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id*. (internal quotation marks and citation omitted).

*Second*, the proposed complaint plausibly alleges that Presiding Commissioner Tips caused a government agency to prohibit a religious entity from engaging in a religious practice because of her personal animus against that religion. No reasonable official could have thought this action permissible under the Free Exercise Clause. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue [or, here, governmental action] . . . prohibits conduct because it

4

is undertaken for religious reasons[;] [i]ndeed, it was historical instances of religious persecution and intolerance of religious persecution and intolerance that gave concern to those who drafted the Free Exercise Clause." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532 (1993) (internal quotations omitted).

*Third*, at the motion-to-dismiss stage, once the plaintiff "has adequately pleaded a claim of intentional [] discrimination under § 1983" based on an inherently suspect distinction such as sex, race, or religion, "she has pleaded a violation of clearly established law so QI is foreclosed at this stage of the proceeding." *See Jackson v. Duff*, 2025 U.S. App. LEXIS 32361, at *10–11 (5th Cir. Dec. 10, 2025) (designated for publication); *cf. New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (identifying "religion" as an "inherently suspect distinction[]"). "'[O]fficials generally are precluded from proving that intentionally discriminatory conduct is objectively reasonable.'" *Jackson*, 2025 U.S. App. LEXIS 32361, at *10–11 (quoting *Piatt v. City of Austin*, 378 F. App'x 466, 469 (5th Cir. 2010)). Amendment is not futile.

**B.      Granting the motion for leave to amend will neither cause undue delay nor prejudice.**

Defendants also argue that granting the motion for leave would impose undue delay and prejudice. Defendants first argue that the operative facts that EPIC seeks to add were known at the time EPIC filed its First Amended Complaint. Dkt. #43 at 10. But many of the new facts were discovered by EPIC after the filing of the operative complaint, including from internal agency documents produced in discovery. Dkt. #31 at 3; Dkt. #31-2. Defendants (at 10–11) cite *Parish v. Frazier*, for the proposition that courts routinely find undue delay where the plaintiff seeks amendment only in reaction to a dispositive motion, but that proposition unsupported by the opinion. *See* 195 F.3d 761, 764 (5th Cir. 1999). Moreover, *Parish* concerned a proposed amended pleading in response to a *motion for summary judgment* that sought to "raise new theories of

5

recovery by amendment."  *Id.*  Here, EPIC seeks to amend in response to a *motion to dismiss* and seeks to add only factual allegations to address supposed pleading deficiencies, not new legal theories to evade summary judgment.

Defendants also attempt to conjure the specter of prejudice by arguing that the amended pleading will require greater discovery.  *See* Dkt. #43 at 11.  Not so.  All the information identified in the response is already squarely at issue.  Finally, Defendants argue that Presiding Commissioner Tips will suffer acute prejudice because, in effect, she would be obliged to file a new motion to dismiss.  *See id.*  She also characterizes the proposed complaint as an artful attempt to plead around the QI defense.  *Id.*  But that is neither fair nor accurate.  Her motion to dismiss demands more factual allegations regarding her involvement in the constitutional violations, then her response to EPIC's motion for leave to amend fervently resists EPIC's attempt to meet that same demand. Leave to amend should be granted.

**Dated:** December 19, 2025          Respectfully submitted,

**TERRAZAS PLLC**

1001 S. Capital of Texas Highway, Bldg. L, Suite 250
Austin, Texas 78746
512.680.3257

By:  /s/ *Eric A. Hudson*
Eric A. Hudson
State Bar No. 24059977
ehudson@terrazaspllc.com
Benjamin L. Dower
State Bar No. 24082931
bdower@terrazaspllc.com

**ATTORNEYS FOR EAST PLANO ISLAMIC CENTER**

**CERTIFICATE OF SERVICE**

I affirm that on December 19, 2025, I filed the foregoing through the Western District of

Texas's ECF system, serving a copy on all counsel of record in the process.

*/s/ Benjamin L. Dower*
Benjamin L. Dower
