IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **EAST PLANO ISLAMIC CENTER (EPIC),** | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | **Civil Action No. 1:25-cv-1085** |
| **TEXAS FUNERAL SERVICE COMMISSION, TEXAS FUNERAL SERVICE COMMISSION EXECUTIVE DIRECTOR, in their official capacity, and KRISTIN TIPS, in her individual capacity,** | § § § § § § § § § | |
| *Defendants.* | § § | |

**DEFENDANTS TEXAS FUNERAL SERVICE COMMISSION AND TEXAS FUNERAL SERVICE COMMISSION EXECUTIVE DIRECTOR'S MOTION TO DISMISS**

NOW COME Defendants the Texas Funeral Service Commission ("TFSC") and the Texas Funeral Service Commission Executive Director in the official capacity and move to dismiss Plaintiff's Second Amended Complaint (hereinafter, "Complaint") (Doc. 46) in its entirety under Federal Rule of Civil Procedure 12(b)(1), and respectfully show as follows:

## I.    INTRODUCTION

This lawsuit arises from a regulatory dispute but is framed as a constitutional challenge against a Texas licensing agency. Plaintiff East Plano Islamic Center ("EPIC") asks this Court to prohibit TFSC from enforcing neutral licensing laws based on a single cease-and-desist letter issued during an ongoing investigation. Federal courts do not exercise jurisdiction over such premature challenges to state regulatory activity.

EPIC asserts multiple claims against the moving Defendants, including an ultra vires claim against the Executive Director (Count 1); claims under the Texas Constitution (Counts 2 and 3); a

claim under 42 U.S.C. § 1983 (Count 4); and a claim under the Texas Religious Freedom Restoration Act (Count 5).

The action fails at the threshold. The TFSC is an arm of the State of Texas and enjoys Eleventh Amendment immunity from suit in federal court. The Supreme Court has long held that the Eleventh Amendment bars suits against a state or its agencies regardless of the form of relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (holding that the Eleventh Amendment bars suits against a State and its agencies absent consent). This immunity applies equally to state-law claims asserted in federal court absent a clear waiver by the State. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117, 121 (1984). That principle applies directly to EPIC's state-law claims under the Texas Constitution and the Texas Religious Freedom Restoration Act. The narrow *Ex parte Young* exception permits certain suits against state officials, but it does not authorize claims against the state itself or its agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (holding that the *Ex parte Young* exception does not apply to suits against States or state agencies).

EPIC attempts to proceed against the Commission's Executive Director by invoking the ultra vires doctrine and § 1983. Yet the Complaint challenges discretionary regulatory enforcement conducted under authority granted by Chapter 651 of the Texas Occupations Code. Texas law does not allow a plaintiff to circumvent sovereign immunity merely by disagreeing with how an agency interprets or enforces a statute. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (ultra vires suits permitted only to require officials to comply with the law, not to control discretionary acts); *Hall v. McRaven*, 508 S.W.3d 232, 242-43 (Tex. 2017) (holding that an official does not act ultra vires by making an incorrect decision within the scope of delegated authority).

The federal constitutional claim fares no better. Jurisdiction exists under the *Ex parte Young* exception only when a plaintiff alleges an ongoing violation of federal law by a state official who has a specific enforcement connection to the challenged conduct. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 647 (2002) (requiring an ongoing violation of federal law and a connection between the state official and enforcement of the challenged conduct); *see also Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2025). EPIC alleges only that the Commission issued a cease-and-desist letter in March 2025. Compl. at 1. But the record reflects no final enforcement action—only an ongoing investigation, and, as will be discussed below, even the so-called cease-and-desist letter was rapidly followed by a further letter from the agency significantly clarifying the scope and import of the earlier letter (though, surprisingly, Plaintiff does not refer to this letter). And *Ex parte Young* does not apply unless the named official has a sufficient enforcement connection to the challenged conduct and there is an ongoing violation of federal law to enjoin. *Verizon Md., Inc.*, 535 U.S. at 645; *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc); *City of Austin v. Paxton*, 943 F.3d 993, 1000-02 (5th Cir. 2019); *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239, 256-58 (5th Cir. 2025) (holding that an official's generalized authority or referral power is insufficient absent a concrete enforcement connection). Here, EPIC alleges at most that the Executive Director issued a letter and continues to investigate—conduct that falls short of the concrete enforcement connection required to invoke *Ex parte Young* jurisdiction. In short, where there is no final enforcement action and no concrete enforcement connection, there is no ongoing violation sufficient to invoke federal jurisdiction.

Concerning the procedural posture of this case, EPIC originally filed suit in the 250th Judicial District Court, Travis County, and TFSC then removed the case to this Court. A State's removal of a case can waive Eleventh Amendment immunity from suit in federal court in certain

3

circumstances. *Lapides v. Board of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620, 623-24 (2002); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 252-55 (5th Cir. 2005). But removal does not create subject-matter jurisdiction where none otherwise exists, nor does it eliminate the jurisdictional defects addressed below. *See The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 528-29 (5th Cir. 2020). Thus, even assuming a limited waiver of Eleventh Amendment immunity from suit by removal, EPIC must still establish a ripe controversy, Article III standing, and a proper basis for proceeding under *Ex parte Young*.

This Court does not enjoy subject-matter jurisdiction for the further reason that it has not been presented with a ripe controversy. The record reflects an ongoing regulatory investigation by the TFSC, including the recent issuance of a subpoena and continued fact development. Federal courts typically do not intervene in ongoing administrative processes in which final agency action is pending. This absence of ripeness independently requires dismissal.

Federal courts must dismiss claims over which jurisdiction is lacking. As shown below, EPIC's claims fail on multiple independent grounds. First, the Eleventh Amendment bars all claims against the TFSC. *See* Section III.B, *infra*. Second, EPIC's ultra vires theory fails because the challenged conduct falls squarely within the Commission's statutory authority. *See* Section III.C, *infra*. Third, EPIC's claims are not ripe, and EPIC lacks standing. The agency has not taken a final enforcement action, and any alleged injury results from EPIC's own voluntary decisions. *See* Sections III.D–E, *infra*.

## II.    FACTUAL BACKGROUND

For purposes of this Motion, Defendants accept the factual allegations in the Complaint except where contradicted by documents referenced therein or herein. EPIC alleges that on March 26, 2025, the then-Executive Director of the Commission issued a cease-and-desist letter

directing it to halt certain activities. *See* Compl. at 1 (Ex. 4 to Compl. (Doc. 46)). EPIC further alleges that "[t]he Commission's actions forced EPIC to suspend sacred funeral rites" and caused it to discontinue those activities. *Id*. at 1-2.

But the regulatory process did not end with that early piece of correspondence. In July 2025, the Commission issued a follow-up letter clarifying its position and addressing the scope of the prior communication. *See* **Ex. 1** (July 16, 2025 Letter, previously submitted as Ex. 1 (Doc. 12-1) to Plaintiff's July 16, 2025 "Advisory" (Doc. 12) to the Court). That correspondence clarified that the Commission had not reached a final enforcement determination and provided detailed guidance to Plaintiff as to what specific activities it could continue to carry out, and in what manner, while the investigation continued.

The Commission's investigation has continued through formal process. In March 2026, the Commission issued a subpoena seeking information relevant to its ongoing inquiry. *See* **Ex. 2** (Mar. 25, 2026 subpoena). EPIC, through counsel, in April 2026 declined to comply and asserted objections challenging the Commission's authority and the scope of its investigation. *See* **Ex. 3** (Apr. 15, 2026 subpoena correspondence). That response confirms that the administrative process remains active and unresolved, and that no final enforcement determination has been made. These actions reflect an ongoing administrative process rather than a final enforcement determination.

EPIC nonetheless filed suit seeking to enjoin enforcement of Chapter 651 before the agency has reached a final position.

### III.    ARGUMENT AND AUTHORITIES

**A.    Legal Standard**

Federal courts are courts of limited jurisdiction and must dismiss an action whenever subject-matter jurisdiction is lacking. FED. R. CIV. P. 12(b)(1). Sovereign immunity and Eleventh

Amendment immunity operate as jurisdictional limitations that deprive federal courts of authority to adjudicate claims against states and their agencies absent consent or valid congressional abrogation. A Rule 12(b)(1) motion may challenge jurisdiction based on the pleadings alone. When sovereign immunity or other jurisdictional defects are asserted, the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Article III further limits federal jurisdiction to actual cases or controversies. A plaintiff must establish standing and ripeness, both of which are essential components of subject-matter jurisdiction. *E.g., Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). Claims that depend on contingent future events, or that do not arise from a final and concrete governmental action, fall outside the jurisdiction of federal courts. *Texas v. United States*, 523 U.S. 296, 300 (1998). With these principles in mind, the Court must determine whether it possesses jurisdiction over the claims asserted against the Texas Funeral Service Commission and its Executive Director. The jurisdictional defects presented here are threshold issues that must be resolved before the Court may consider the merits of EPIC's claims.

**B.      Claims Against the Texas Funeral Service Commission Are Barred by Eleventh Amendment Immunity**

The claims against the TFSC must be dismissed because the Commission is a state agency entitled to Eleventh Amendment immunity. The Eleventh Amendment bars suits in federal court against a state or its agencies unless the state has waived immunity or Congress has validly abrogated it. The Supreme Court has consistently reaffirmed that this protection extends to state agencies functioning as arms of the state. *Pugh*, 438 U.S. at 782; *see also Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986). This immunity is jurisdictional in nature and deprives federal courts of authority to adjudicate claims against a state agency at the outset.

6

TFSC is established by statute as a state regulatory agency responsible for, among other things, licensing and regulating funeral establishments and funeral directors under Chapter 651 of the Texas Occupations Code. As an arm of the State of Texas, the Commission enjoys the same immunity protections as those afforded to the state itself.

EPIC attempts to avoid this jurisdictional bar by invoking *Ex parte Young* and by asserting that TFSC waived immunity through removal. Neither argument succeeds. *Ex parte Young* permits suits for prospective relief against state officials acting in their official capacities when an ongoing violation of federal law is alleged. The doctrine does not authorize suits directly against the state or its agencies. The Supreme Court has expressly held that Young "has no application in suits against the States and their agencies." *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146. *Ex parte Young* therefore provides no basis to maintain claims against TFSC, a state agency rather than an individual officer.

EPIC's waiver argument is equally misplaced. *See* Compl. ¶ 9 (alleging that Defendants waived immunity by removing the case to federal court). As noted, a State's removal of a case can waive Eleventh Amendment immunity from suit in federal court in certain circumstances. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 252–55 (5th Cir. 2005). But that waiver is limited. As the Fifth Circuit has explained, removal does not expand the scope of claims over which the Court has jurisdiction, by, for example, eliminating jurisdictional requirements or defenses. *Meyers*, 410 F.3d at 255. Removal also does not create subject-matter jurisdiction where none otherwise exists. *See The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 528-29 (5th Cir. 2020). Thus, even assuming a limited waiver of Eleventh Amendment immunity from suit by removal, EPIC must still establish

a valid basis for federal jurisdiction. EPIC has not done so, and sovereign immunity and Article III defects independently bar EPIC's claims and compel them to be dismissed.

**C.      The Ultra Vires Claim Against the Executive Director Fails to Establish Jurisdiction**

EPIC attempts to avoid sovereign immunity by asserting that the Commission, through its Executive Director, acted without authority in issuing the cease-and-desist letter and initiating related enforcement activity. The Complaint itself defeats that theory.

The *Ex parte Young* inquiry overlaps with Texas's ultra vires doctrine, as both turn on whether the official is acting outside the bounds of lawful authority, which is a far different inquiry from that of whether the official is exercising that authority incorrectly. Texas law permits ultra vires suits only when a state official acts without legal authority, exceeds the bounds of that authority, or, finally, fails to perform a purely ministerial duty. *Heinrich*, 284 S.W.3d at 372.

The Texas Supreme Court has made clear that an ultra vires claim requires more than a disagreement with how an official exercises statutory authority. The official must have acted outside the bounds of that authority, not merely exercised it incorrectly. *Hall*, 508 S.W.3d at 239-40 (holding that an official does not act ultra vires merely by reaching an incorrect legal conclusion within the scope of delegated authority). Courts do not use the ultra vires doctrine to second-guess discretionary regulatory decisions or to resolve disputes over statutory interpretation.

Texas courts have repeatedly emphasized that ultra vires claims do not lie when an official exercises discretionary authority within the scope of delegated statutory power. Discretionary determinations—particularly in regulatory enforcement—fall within the scope of delegated authority and are not subject to ultra vires review absent a complete lack of authority.

EPIC's allegations fall squarely within the category of discretionary enforcement activity. Chapter 651 authorizes the Commission to regulate funeral establishments, investigate potential

violations, and enforce licensing requirements. The Commission is authorized to "administer and enforce" Chapter 651 and to investigate alleged violations of the statute. TEX. OCC. CODE §§ 651.103, 651.152, 651.202. The statute further authorizes the Commission to investigate potential violations and to take appropriate enforcement-related actions within its regulatory framework, including referring matters for further proceedings where warranted. *See*, *e.g.*, TEX. OCC. CODE §§ 651.151, 651.451–.460. The Executive Director acts as the administrative head of the agency charged with carrying out those functions. TEX. OCC. CODE § 651.101. Those statutory responsibilities necessarily include communicating enforcement positions falling within the agency's regulatory sphere pending further investigation.

The Complaint does not allege that the Executive Director lacked authority to enforce Chapter 651. At most, EPIC disputes how that authority was exercised, which is insufficient as a matter of law to state an ultra vires claim. EPIC thus appears to contend that the Commission made a mistake of fact when it opined provisionally that EPIC was operating a funeral home without a license and by exercising regulatory powers in relation to EPIC's activities. *See*, *e.g.*, Compl. ¶ 45. As such, EPIC's allegations challenge the correctness of the agency's (preliminary and provisional) determinations, not the existence of its authority to act.

A dispute over statutory interpretation does not give rise to an ultra vires claim. The Texas Supreme Court has repeatedly rejected attempts to recast such disagreements as jurisdictional defects. *Hall*, 508 S.W.3d at 239-40. If an official has authority to act and exercises that authority, the ultra vires exception does not apply even if the plaintiff believes that the decision was wrong.

Further, the Complaint fails to identify any purely ministerial duty that the Executive Director allegedly failed to carry out. Enforcement of a regulatory statute necessarily involves judgment and discretion, particularly when determining whether conduct falls within the statute's

scope. The issuance agency determinations and guidance to a regulated entity in the course of an ongoing investigation reflects a routine exercise of delegated regulatory authority, not action outside it. That conduct confirms the exercise of delegated authority, not the absence of it.

The Executive Director acted within the scope of delegated statutory authority. These allegations establish, at most, a disagreement with the Commission's exercise of delegated authority, which is insufficient to support an ultra vires claim and cannot supply a basis for jurisdiction. This defect independently requires dismissal of the claims against the Executive Director.

## D.    EPIC's Claims Are Not Ripe and Must Be Dismissed for Lack of Subject-Matter Jurisdiction

Even apart from sovereign immunity, EPIC's claims are not ripe for adjudication and must be dismissed under Rule 12(b)(1). *See Google, Inc. v. Hood*, 822 F.3d 212, 224-25 (5th Cir. 2016) (holding that pre-enforcement challenges to investigative actions are not ripe where no enforcement proceeding is pending and any alleged injury remains speculative); *see also Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). Federal courts do not sit to supervise ongoing state investigations or resolve legal questions in advance of final agency action. Where an agency is still gathering facts and has not reached a definitive enforcement position, any claimed injury remains contingent and premature. Courts consistently hold that such ongoing investigations do not give rise to ripe claims because any alleged injury depends on future, contingent enforcement decisions.

Article III limits federal jurisdiction to actual cases and controversies. A claim is not ripe unless it rests upon a definitive agency position that inflicts a concrete and immediate injury. *Greenstein*, 691 F.3d at 715. This requirement reflects the settled principle that federal courts do not intervene in ongoing administrative processes or adjudicate abstract disagreements over

regulatory policy. *See id.*; *see also Hood*, 822 F.3d at 224-25 (pre-enforcement challenge to investigative action not ripe absent a definitive enforcement position).

The record reflects that the Commission is still working on its investigation and has not articulated a definitive enforcement position. The agency continues to gather information through investigative tools, including the issuance of a subpoena (that Plaintiff has evidently resisted), demonstrating that the regulatory process remains ongoing. *See* **Exs. 2, 3**.

The chronology of events further confirms the absence of a ripe dispute. The Commission issued its initial correspondence in March 2025, and this was supplemented by the agency's July 2025 letter (**Ex. 1**) providing Plaintiff with guidance and explanations about the applicable regulatory framework while the agency pursued its investigation. The agency has continued to develop the factual record through investigative measures. This sequence demonstrates that the regulatory process is ongoing and that no final agency action has occurred.

EPIC's own allegations reinforce that conclusion. The Complaint asserts that EPIC "suspend[ed]" its activities in response to the Commission's initial correspondence. Compl. at 1-2. But the existence of the subsequent clarification and the continued investigation confirm that alleged injury, if any, can only flow from future enforcement decisions representing definitive agency action.

This case is not a challenge to final agency action; it is a challenge to an investigation still in progress. Federal jurisdiction does not extend to disputes that depend on future agency action or evolving factual determinations. EPIC's claims, therefore, are not ripe for review and must be dismissed.

To the extent EPIC's claims were premised on the initial cease-and-desist letter, subsequent communications from the Commission clarify that no final enforcement action has been taken.

Any alleged controversy tied to that initial communication has been overtaken by subsequent agency action and does not present a live case or controversy. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

**E.    EPIC Lacks Article III Standing Because Its Alleged Injuries Are Not Fairly Traceable to Defendants**

EPIC also lacks Article III standing because its alleged injuries are not fairly traceable to any final or coercive action by Defendants. Standing requires a plaintiff to demonstrate an injury in fact that is concrete and imminent, fairly traceable to the challenged conduct, and likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). These requirements are not satisfied where the alleged injury results from the plaintiff's own independent choices rather than a binding government action.

EPIC's theory of injury rests on its assertion that the Commission's March 2025 letter "forced EPIC to suspend sacred funeral rites" and caused it to discontinue those activities. Compl. at 1-2; *see also id.* ¶ 10 (claiming that TFSC "order[ed] a mosque to cease its Islamic rites"). But the Complaint itself alleges that EPIC "suspend[ed]" those activities in response to the March 2025 letter, confirming that any alleged injury flows from EPIC's own decision rather than from a binding enforcement action. The record reflects that no final administrative report or recommendation has issued concerning EPIC, no disciplinary hearing proceeding has been initiated, no penalties have been proposed or assessed, and no final agency action has occurred under Chapter 651. Instead, the Commission is engaged in an ongoing investigation of EPIC's activities under the applicable statute.

EPIC's decision to suspend its operations therefore constitutes a voluntary response to a non-final agency action, not an injury fairly traceable to Defendants. An injury is not fairly traceable to government conduct when it results from a plaintiff's independent decision to alter its

12

behavior in response to perceived regulatory risk rather than from a concrete legal requirement. The Fifth Circuit has held that such injuries arising from a plaintiff's own independent decisions do not satisfy Article III standing. *Zimmerman v. City of Austin*, 881 F.3d 378, 389-90 (5th Cir. 2018) (holding that self-inflicted injuries based on a plaintiff's own interpretation of law do not satisfy Article III standing).

The absence of any final or coercive enforcement action is dispositive. Where the government has not imposed legal consequences or taken a definitive position, any alleged injury remains contingent on future events that may never occur. EPIC's asserted harm depends on the possibility of future enforcement following the completion of the Commission's investigation. Such contingent injuries do not satisfy Article III.

Nor has EPIC demonstrated redressability. Because no final enforcement action has been taken, it is speculative whether the relief EPIC seeks would alter its legal position or prevent any future injury. Federal courts do not adjudicate claims based on uncertain future enforcement scenarios or hypothetical disputes.

EPIC therefore fails to establish that its alleged injuries are fairly traceable to Defendants or likely to be redressed by judicial relief. This independent jurisdictional defect requires dismissal. Where a plaintiff's alleged injury arises from its own response to a non-final agency action, the claim fails for lack of both standing and ripeness.

To the extent the Court concludes that EPIC lacks Article III standing, the appropriate disposition following removal may be remand rather than dismissal. *See* 28 U.S.C. § 1447(c); *Lutostanski v. Brown*, 88 F.4th 583 (5th Cir. 2023) (holding that when a removed case lacks Article III standing, remand—not dismissal—is generally required). Regardless of the procedural

13

disposition, however, the absence of standing confirms that this Court lacks jurisdiction over EPIC's claims.

## IV.    CONCLUSION AND PRAYER FOR RELIEF

This case presents no justiciable controversy within the jurisdiction of a federal court. It is a premature challenge to an ongoing state regulatory investigation—precisely the type of dispute that sovereign immunity and Article III place beyond the reach of federal judicial power.

Multiple, independent jurisdictional defects require dismissal. The Texas Funeral Service Commission is immune from suit under the Eleventh Amendment, and the limited waiver associated with removal does not, for example, create jurisdiction or excuse the standing requirement when it is otherwise lacking. EPIC's ultra vires theory fails because the challenged conduct reflects the exercise of delegated statutory authority, not action outside it. EPIC's claims are not ripe, as no final enforcement action has occurred, and EPIC lacks Article III standing because any alleged injury results from its own voluntary response to a non-final agency action. EPIC likewise fails to allege an ongoing violation of federal law sufficient to invoke jurisdiction under *Ex parte Young*.

These defects independently and collectively deprive this Court of subject-matter jurisdiction. Taken together, they confirm that this action cannot proceed in federal court.

WHEREFORE, PREMISES CONSIDERED, Defendants Texas Funeral Service Commission and the Texas Funeral Service Commission Executive Director, in the official capacity, respectfully request that the Court grant this Motion to Dismiss and dismiss Plaintiff's claims with prejudice for lack of subject-matter jurisdiction. To the extent the Court determines that any claim must be remanded rather than dismissed, Defendants respectfully request remand

14

to state court pursuant to 28 U.S.C. § 1447(c). Defendants further request such other and further

relief to which they may be justly entitled.

Respectfully submitted,

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division


*/s/ Scott D. Smith*
SCOTT D. SMITH
Texas Bar No. 24011874
Assistant Attorney General
THOMAS BEVILACQUA
Texas Bar No. 00793342
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
P: (737) 224-2489 | F: (512) 320-0667
thomas.bevilacqua@oag.texas.gov
scott.smith@oag.texas.gov

**Counsel for Defendants Texas Funeral Service Commission and Texas Funeral Service Commission Executive Director, in their official capacity**

15

**CERTIFICATE OF SERVICE**

I certify that on April 30, 2026, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all counsel of record in this case.

/s/ Scott D. Smith
Scott D. Smith
Assistant Attorney General

16