# EXHIBIT 3



**Eric A. Hudson**
512.904.0200
ehudson@atlawpllc.com

April 15, 2026

<u>*Via electronic mail and regular mail*</u>
ATTN: Norma Rodriguez-Dietz
Investigator
Texas Funeral Service Commission
1801 Congress Ave.
Austin, Texas 7871
norma.rodriguez@tfsc.texas.gov

> RE:    **March 25, 2026 Demand for Records**

Pursuant to the subpoena issued March 25, 2026 (the "Subpoena"), East Plano Islamic Center ("EPIC"), through counsel, submits the following response and objections.

EPIC remains committed to cooperating with any lawful inquiry conducted within the bounds of the Texas Funeral Service Commission's ("TFSC" or the "Commission") statutory authority and in a manner consistent with applicable procedural and constitutional safeguards. The Subpoena, however, presents threshold jurisdictional, procedural, and constitutional defects that preclude compliance.

As an initial matter, the Subpoena exceeds the Commission's statutory authority. Chapter 651 of the Texas Occupations Code limits the Commission's regulatory reach to persons engaged in funeral directing for compensation. TEX. OCC. CODE §§ 651.001(6)–(8), 651.351. EPIC does not operate a funeral establishment, does not engage in embalming, and does not provide funeral directing services for compensation. Rather, EPIC's role—consistent with its publicly available materials—is limited to facilitating religious rites, assisting families, and coordinating with licensed funeral homes and cemeteries where appropriate. *See* Funeral Services, East Plano Islamic Center, https://epicmasjid.org/funeral-service-post/ (last visited Apr. 15, 2026). EPIC does not hold itself out as a funeral home and does not perform regulated activities within the meaning of Chapter 651.

Indeed, the Commission has already acknowledged as much. In its July 16, 2025 correspondence, the Commission expressly confirmed that religious organizations may engage in activities such as performing funeral prayers, notifying the community, assisting families in identifying and contacting licensed funeral establishments, and helping with washing and shrouding—so long as such activities are conducted without compensation and in compliance with Texas law—and that the Commission "does not regulate such practices" and does not consider them "funeral service operations." Ex. 1 at 2–3, *East Plano Islamic Ctr. v. Tex. Funeral Servs. Comm'n*, No. 1:25-cv-01085 (W.D. Tex. July 16, 2025), ECF No. 12-1. That position was

ARAMBULA | TERRAZAS PLLC
April 15, 2026
Page 2

reiterated to the federal court, where the Commission represented that EPIC would not be deemed in violation of the March 26, 2025 order for engaging in those same religious activities.  Pl.'s Advisory at 1, *East Plano Islamic Ctr. v. Tex. Funeral Servs. Comm'n*, No. 1:25-cv-01085 (W.D. Tex. July 16, 2025), ECF No. 12.

The Subpoena disregards those limitations and seeks to expand the Commission's reach beyond what Chapter 651 permits and beyond what the Commission itself has already recognized.

The Commission's own historical position confirms this distinction.  For decades, it has recognized that religious organizations may assist with burial-related activities so long as they do not provide services for compensation.  The Subpoena ignores that boundary and attempts to extend regulatory authority where the Legislature has not done so. An administrative agency may exercise only those powers conferred by statute, and actions taken outside those bounds are void. *Pub. Util. Comm'n of Tex. v. City of Austin*, 728 S.W.2d 907, 910 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).  On its face, the Subpoena reflects an effort to regulate conduct outside Chapter 651.

The Subpoena is independently defective because it does not seek the production of identifiable documents maintained in the ordinary course.  Instead, it repeatedly requires EPIC to compile, reconstruct, and create information. Among other things, it demands a list of all decedents over a multi-year period; requires EPIC to identify third parties and their roles in connection with each decedent; and seeks a detailed "accounting" of compensation, including who paid what, to whom, and how.  It further requires EPIC to identify locations, reconstruct timelines, and attribute conduct to specific individuals.

These are not requests for existing records.  They are requests that require EPIC to assemble information from disparate sources, perform factual reconstruction, and generate summaries or analyses that may not exist in any single document.  A subpoena may compel the production of existing documents; it does not authorize the government to require a recipient to create new information or perform investigative work.  *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003).  The Subpoena exceeds that limitation.

The Subpoena also raises threshold due process and constitutional concerns.  Chapter 651 provides no meaningful mechanism for a recipient to challenge a subpoena prior to compelled compliance.  Due process requires an opportunity to be heard at a meaningful time and in a meaningful manner before disclosure is required.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Consistent with that principle, the Fifth Circuit has made clear that, absent limited exceptions not present here, the subject of an administrative subpoena must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker.  *Zadeh v. Robinson*, 928 F.3d 457, 463–64 (5th Cir. 2019) (*citing See v. City of Seattle*, 387 U.S. 541 (1967); *Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984); *City of Los Angeles v. Patel*, 576 U.S. 409 (2015)).  More recently, the Fifth Circuit reaffirmed that principle and clarified that the mere issuance of a subpoena is not sufficient; the government must enforce the subpoena in a manner that permits the recipient to object before producing records.  *Heidi Grp., Inc. v. Tex. Health & Hum. Servs.*

1001 S. Capital of Texas Hwy, Bldg L, Suite 250
Austin, TX 78746 | www.atlawpllc.com

ARAMBULA | TERRAZAS PLLC
April 15, 2026
Page 3

---

*Comm'n*, 138 F.4th 920, 932–33 (5th Cir. 2025).  In doing so, the court further held that officials who failed to provide any opportunity for precompliance review were not entitled to qualified immunity, underscoring that this requirement is not merely aspirational but a clearly established constitutional constraint.  *Id.*

The statutory framework invoked here does not provide such a mechanism.  Chapter 651 authorizes the issuance of subpoenas but does not identify any procedure by which a recipient may obtain precompliance review before a neutral decisionmaker, nor does it impose meaningful limits on the manner in which the Commission may demand compliance.  As a result, the statute—at least as applied here—fails to function as a constitutionally adequate substitute for a warrant.  *See Patel*, 576 U.S. at 421; *Zadeh*, 928 F.3d at 463–64.

A regime that forces compliance first and permits challenge only after enforcement is not a meaningful safeguard; it is precisely the type of administrative compulsion the Constitution does not permit.  *See Heidi Grp.*, 138 F.4th at 932–33; *Zadeh*, 928 F.3d at 463–64.  To the extent Chapter 651 is construed to authorize enforcement of subpoenas without affording a meaningful opportunity for precompliance review, it is unconstitutional as applied.  The structure of the Subpoena presents that concern here.

The context in which the Subpoena was issued further underscores these defects.  The Commission has already issued a cease-and-desist directive and, based on that determination, made a criminal referral to the Collin County District Attorney.  As alleged in the pending federal action, that referral was part of a broader enforcement posture directed at EPIC's religious practices.  In that posture, the Commission's continued use of administrative subpoena power to compel broad categories of information—particularly information that must be created rather than produced—raises serious concerns regarding the use of civil process to advance a criminal investigation.

While a criminal referral does not, in itself, divest the Commission of authority, it materially changes the character of the inquiry.  At that point, the proper forum for fact development is the criminal process, subject to its attendant procedural safeguards, including limitations on compelled self-incrimination and judicial oversight of discovery.  The use of an administrative subpoena to obtain information that overlaps with the subject of a criminal referral—particularly where the requests are expansive and untethered to any specific statutory violation—creates the appearance, and the risk, that administrative process is being used to circumvent those safeguards.  Courts do not permit such use of civil or administrative tools for an improper investigative purpose.  *United States v. Powell*, 379 U.S. 48, 58 (1964).

The breadth of the Subpoena reinforces that concern.  It seeks information regarding all decedents over an extended period, without limitation tied to any identified complaint or statutory provision.  It reaches beyond any conceivable regulatory interest and into the activities of third parties who are not subject to the Commission's jurisdiction.  Administrative subpoenas must be reasonably tailored and not unduly burdensome.  The Subpoena is not.

ARAMBULA | TERRAZAS PLLC
April 15, 2026
Page 4

The Subpoena also implicates significant constitutional concerns. It seeks information relating to religious practices, internal operations, and community participation—areas afforded heightened protection under the First Amendment and the Texas Constitution. Compelled disclosure in this context is subject to strict scrutiny and must be narrowly tailored to a compelling governmental interest. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462–63 (1958); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533–34 (1993); *Whole Woman's Health v. Smith*, 896 F.3d 362, 368–76 (5th Cir. 2018).

EPIC is a volunteer-driven religious organization, and its practices are informed by sincerely held religious beliefs, including the principle that charitable acts should be performed discreetly to preserve their sincerity. *See The Qur'an* 2:271 (Sahih Int'l trans.). Efforts to compel disclosure of internal religious activities and related information therefore raise serious concerns under the Free Exercise and Free Association Clauses. They also implicate the Texas Religious Freedom Restoration Act, which prohibits the government from substantially burdening a person's free exercise of religion. TEX. CIV. PRAC. & REM. CODE § 110.003. These concerns are amplified by the broader context reflected in the federal litigation, which includes allegations of selective enforcement and hostility toward religious practices, underscoring the need for careful adherence to constitutional limits.

Notably, the Subpoena also requests information implicating the privacy rights of third-parties who are not afforded an opportunity to resist the disclosure of their information. The Subpoena asks EPIC to create a list of every decedent who received a funeral service from January 1, 2024 to March 24, 2026 and—for each person so named—identify their full name, the date of their death, the date of their interment, the name of the cemetery where they were interred, the name of the funeral director who made the arrangements, and the name of the funeral director who was present for the interment. Particularly given the current wave of anti-Muslim rhetoric in Texas politics[1], disclosing personally-identifying information to the government without the knowledge or consent of the deceased's families raises additional privacy concerns of constitutional import. *Cf. Bates v. City of Little Rock*, 361 U.S. 516, 524–25 (1960) (recognizing that "compulsory disclosure of the membership lists of the local branches of the [NAACP] would work a significant interference with the freedom of association of their members," considering the "fear of community hostility and economic reprisals that would follow public is closure of the membership lists," "brought to bear only after the exercise of governmental power had threatened to force disclosure of the members names").

Finally, EPIC notes that there is ongoing federal litigation challenging the Commission's authority and its actions toward EPIC, including claims that the Commission has exceeded its statutory authority, violated constitutional protections, and engaged in unlawful retaliation for the exercise of First Amendment rights. The subject matter of the Subpoena overlaps directly with

---

[1] *See, e.g.*, Eleanor Klibanoff, *TribCast: Anti-Muslim rhetoric in Texas politics: Rep. Salman Bhojani, one of the first Muslim state legislators, joins TribCast to talk about the backlash his community has experienced in state government*, Apr. 7, 2026, https://www.texastribune.org/2026/04/07/tribcast-muslim-rhetoric-backlash-texas/ (last visited Apr. 15, 2026); Aleena Fayaz, *'It's solid gold': Some Texas Republicans ramp up criticisms of Muslims to energize primary voters*, CNN, Apr. 11, 2026, https://www.cnn.com/2026/04/11/politics/texas-republicans-muslim-criticism-primaries (last visited Apr. 15, 2026).

1001 S. Capital of Texas Hwy, Bldg L, Suite 250
Austin, TX 78746 | www.atlawpllc.com

ARAMBULA | TERRAZAS PLLC
April 15, 2026
Page 5

those claims.  Against that backdrop, the issuance of the Subpoena—seeking expansive categories of information untethered to any identified statutory violation—raises additional concerns that it is not a neutral regulatory tool, but rather part of the same course of conduct at issue in the federal case.  To the extent the Commission seeks information bearing on those issues, such matters are more appropriately addressed within that proceeding and subject to the Federal Rules of Civil Procedure and judicial oversight, rather than through parallel administrative process.

In view of these considerations, EPIC is not in a position to comply with the Subpoena as currently drafted.  However, EPIC remains willing to meet and confer promptly to discuss the scope of the requests, identify any information that may be appropriately produced, and explore a path forward that is consistent with the Commission's statutory authority and applicable legal standards.  EPIC will take reasonable steps to preserve potentially responsive materials pending resolution of these issues.

This response is made in good faith and without waiver of any rights, remedies, or objections, all of which are expressly reserved.

Sincerely,

*/s/ Eric A. Hudson*
Eric A. Hudson
**ARAMBULA | TERRAZAS PLLC**

1001 S. Capital of Texas Hwy, Bldg L, Suite 250
Austin, TX 78746 | www.atlawpllc.com