**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **EAST PLANO ISLAMIC CENTER (EPIC),** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | Civil Action No. 1:25-cv-1085 |
| **TEXAS FUNERAL SERVICES** | § | |
| **COMMISSION,** *et al.* | § | |
| *Defendants* | § | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS TEXAS FUNERAL SERVICE COMMISSION AND TEXAS FUNERAL SERVICE COMMISSION EXECUTIVE DIRECTOR'S MOTION TO DISMISS

Defendants Texas Funeral Service Commission and its Executive Director, sued solely in his official capacity (collectively, "Agency Defendants"), move to dismiss EPIC's claims for lack of subject-matter jurisdiction. Their arguments fail. First, Agency Defendants waived any immunity from suit when they removed this case to federal court. Even aside from waiver, EPIC's claims fall within recognized exceptions to immunity, including *Ex parte Young*, and the Texas Legislature has independently waived immunity for certain claims asserted here. Second, EPIC's claims are ripe because Agency Defendants had already inflicted a concrete injury before suit was filed by issuing a cease-and-desist order and making a criminal referral. Their eleventh-hour attempt to retreat from that order on the eve of the TRO hearing does not erase the injury or deprive this Court of jurisdiction. Third, EPIC has standing because its injuries are directly traceable to Agency Defendants' conduct and are redressable through the relief sought. Accordingly, the motion should be denied. In further support, EPIC respectfully shows the Court as follows:

## I.    BACKGROUND

### A.    Agency Defendants' Statutory Authority

As set forth in greater detail in the pleadings, Chapter 651 of the Texas Occupations Code grants the Commission limited statutory authority. Dkt. 46 at 6–9. In discrete instances, Chapter 651 gives the Commission authority over persons engaged in prohibited practices. TEX. OCC. CODE §§ 651.451–460. And, in those instances, "[a]fter a hearing as provided by this subchapter, the commission may issue a reprimand, assess an administrative penalty, revoke, suspend, or probate the suspension of a license or provisional license, order a license holder to pay a refund under Section 651.603, or impose any combination of those penalties for a violation of this chapter or a rule adopted under this chapter." *Id.* at § 651.501. The Commission may also "bring an action for appropriate injunctive relief against a funeral establishment, an embalmer, or a funeral director who violates this chapter or a rule adopted under this chapter." *Id.* at § 651.601. But nowhere does Chapter 651 give the Commission authority to issue a cease-and-desist order on its own authority—particularly without a hearing.

As it relates to the operation of a funeral establishment, funeral directing, or a funeral director, the Commission's regulatory authority is limited to persons who are engaged in the statutorily-defined activities ***for compensation*** (or represents to the public that they are so doing). *Id.* at § 651.001(6)–(8). An organization who is not receiving compensation, such as a volunteer organization, does not need to be licensed. *See id.* at § 651.351(a). A religious organization praying over a deceased person as a religious activity for which compensation is not sought, not advertised, and not accepted does not meet the definition of a funeral establishment. *See id*. at § 651.001(8). With this context in mind, it is unsurprising that the Commission has, for decades, recognized that "[t]he law allows a family or friends to prepare and bury a body so long as they do

2

not receive compensation for services, file a death certificate and obtain a burial transit permit."
Dkt. 54 at 8–9, 76–77.

### B.      Agency Defendants' Adverse Actions Against EPIC

For many years, EPIC has practiced Islamic funeral rites for deceased members of its religious community. Dkt. 54 at 10–14. This practice is part of the sincerely-held religious beliefs held by EPIC and its Muslim membership—a collective obligation and one of the five cardinal duties of brotherhood in Islam. *Id.* at 10. EPIC does not receive compensation for its services, has not filed a death certificate, has not obtained a burial transit permit, and has not transported the deceased or disposed of the body. *Id.* at 14. Under Chapter 651, EPIC has not engaged in funeral service operations as a matter of law. *Id.*

But in early 2025, activists launched a public campaign against EPIC grounded in anti-Muslim rhetoric, accusing it of importing "Sharia law" and threatening Texas values. Dkt. 46 at 15. Elected officials quickly amplified those claims. *Id.* at 16–17. On February 24, 2025, Governor Abbott publicly declared that "Sharia law is not allowed in Texas" in reference to EPIC. *Id.* at 16. Two days before the Commission issued the cease-and-desist order at issue in this litigation, the Governor announced that "a dozen state agencies" were investigating EPIC. *Id.* at 17. The Attorney General served a civil investigative demand the day before the order issued, and multiple additional state investigations were announced in rapid succession immediately afterward. *Id.* at 17–20.

On March 26, 2025, without going to court to obtain an injunction or an administrative hearing, the Commission issued a letter entitled "Cease & Desist" signed by its Executive Director. Dkt. 46 at 78. The Executive Director's letter made no reference to an ongoing investigation or a preliminary finding. *See id.* Instead, it announced that the "Commission has determined that you

3

are operating as a funeral home without an establishment license in violation of Tex. Occ. Code § 651.351." *Id.* The Executive Director's letter gave no explanation of the basis for the Commission's determination, whether legally or factually. Nor did the letter withhold consequences pending further investigation or process. To the contrary: "Effectively immediately, you are ordered to cease and desist funeral service operations." *Id.* Not only that, but "[b]ased in part on this determination, the [] Commission is also making a criminal referral to the Collin County District Attorney." *Id.*

This occurred during a week where, literally every day, a new state official announced some sort of state action against EPIC, sometimes explicitly linked to EPIC's religious affiliation (Muslim). *See id.* at 16–20. Indeed, the Commission's Presiding Commissioner told her Executive Director that she was coordinating with the Governor's Office regarding cease-and-desist letters *the day before* the Executive Director issued the cease-and-desist letter to EPIC. *Id.* at 26–27. And on the day the Executive Director issued the letter, the Governor's Office issued a press release accusing EPIC of "knowingly breaking state law in many ways, including by operating a funeral home without a license," which it characterized as "a crime [that] will not be tolerated," and noting that the letter "ha[d] been forwarded to the local district attorney's office for potential prosecution." **Ex. 1** (Governor 03/26/25 press release).[1]

As for the Commission's characterization of its own actions, it too issued a press release on March 26, 2025. **Ex. 2** (TFSC News) at 6–7.[2] In this press release, which contained a hyperlink

---

[1] As of this filing, the Governor's March 26, 2025 press release is still available online. *Governor Abbott Announces Action Taken Against East Plano Islamic Center*, Office of the Texas Governor, press release dated March 26, 2025, accessible at https://gov.texas.gov/es/news/post/governor-abbott-announces-action-taken-against-east-plano-islamic-center (last accessed May 11, 2026).

[2] As of this filing, the Commission's March 26, 2025 press release is still available online. *Texas Funeral Service Commission Acts on Unlicensed Operation at the East Plano Islamic Center*

to the press release issued by the Governor's Office, the Commission stated that it has "confirmed that EPIC has been offering comprehensive funeral services," which "include body transportation, ghusl (body wash), private viewing, and funeral prayers, activities that collectively necessitate a funeral establishment license under Texas law." *Id.* at 7. "EPIC's actions constitute funeral directing as defined under Section 651 of the Occupations Code outlining the responsibilities and services considered under funeral directing." *Id.* "Given the seriousness of these findings, the TFSC has also made a criminal referral . . . which could lead to criminal charges of unlawful operations to the public." *Id.*

## C.    Procedural History

On July 2, 2025, EPIC filed its Verified Original Petition and Application for Temporary Restraining Order ("TRO"), Temporary Injunction, and Permanent Injunction against Agency Defendants in the 250th Judicial District Court of Travis County, Texas. Dkt. 1-3 at 5–66. EPIC's TRO application identified the irreparable harm stemming from its members "being buried without the proper prayers performed as the result of an illegal order and in violation of their constitutional rights." Dkt. 1-3 at 28. The next day, after Agency Defendants were served, the presiding judge set EPIC's application for temporary injunction for a hearing on July 14, 2025 and ordered Agency Defendants to appear. Dkt. 1-3 at 68–72.

But just three days before the hearing on EPIC's application for temporary injunction, the Agency Defendants removed the case "pursuant to 28 U.S.C. 1441(a)," Dkt. 1 at 1, which authorizes the removal of civil actions "brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In so doing, Agency Defendants

---

*(EPIC)*, TFSC News, press release dated March 26, 2025, accessible at https://tfsc.texas.gov/news (last accessed May 11, 2026).

"voluntarily invoked the federal court's jurisdiction." *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002).

On July 11, 2025, the same day that Agency Defendants filed their Notice of Removal, EPIC filed a motion for TRO in this Court. *See generally* Dkt. 4. EPIC asked this Court to restrain Agency Defendants from enforcing the cease-and-desist order or directive issued to EPIC on March 26, 2025 and from taking any further action that interfered with or restricted EPIC's religious activities involved in, and attendant to, the performance of religious funeral services. Dkt. 4-2. On July 14, 2025, this Court ordered Agency Defendants to respond by close of business the following day and set the TRO for an in-person hearing on July 17, 2025. Dkt. 8. Pursuant to this Court's order, on July 15, 2025, Agency Defendants filed their response in opposition to Plaintiff's motion for TRO. Dkt. 9. Agency Defendants argued that EPIC was unlikely to succeed on the merits of its claims, failed to show irreparable harm, and that the public interest did not support emergency injunctive relief. *Id.* at 2–16.

On July 16, 2025, just one day before the TRO hearing set by this Honorable Court, Agency Defendants issued a letter that effectively walked back their March 26, 2025 cease and desist order. Dkt. 12-1 at 2–3. In their July 16, 2025 letter, Agency Defendants conceded that the Commission does not regulate the practices at issue and EPIC could continue to engage in those activities. *See id.* at 2–3. This letter represented a dramatic reversal of the Commission's March 26, 2025 press release regarding its cease-and-desist order to EPIC, which specifically identified "ghusl (body wash), private viewing, and funeral prayers" as among the unlawful activities in which EPIC was engaged—indeed, activities it alleged were outright criminal. *Compare* Dkt. 12-1 at 2–3, *with* **Ex. 2** (TFSC News) at 6–7.

6

In their July 16, 2025 letter, Agency Defendants also agreed to notify EPIC's counsel and attempt to resolve any allegations if they received credible information suggesting that any of the activities at issue were being performed in a manner not in compliance with Texas law prior to taking any further action. Dkt. 12-1 at 3. Because this letter "addresse[d] the narrow question of emergency relief raised in EPIC's application for temporary restraining order," EPIC advised the Court that an immediate hearing was no longer necessary. Dkt. 12 at 1. However, as EPIC noted at the time, the underlying controversy was not resolved by the Agency Defendants' eve-of-the-TRO-hearing reversal, as the "cease-and-desist letter remains operative, and with it, the continuing threat of civil penalties and criminal prosecution by the State for conduct that lies at the heart of EPIC's religious exercise." Dkt. 12 at 1–2.

Six months later, Defendants filed a "motion to stay all discovery and proceedings until the Court has ruled on [subsequently-added defendant Kristin] Tips' November 20, 2025 motion to dismiss asserting qualified immunity (D.E. 29)." Dkt. 30. Eventually, the parties reached an agreement on an unopposed motion to abate the current scheduling order pending a ruling on Ms. Tips' motion to dismiss asserting qualified immunity. Dkt. 49. This led to a Court order abating the scheduling order and all deadlines contained therein. Dkt. 50. Then, three-and-a-half months later, on April 30, 2026, Agency Defendants moved to dismiss Plaintiff's Second Amended Complaint in its entirety by invoking, *inter alia*, Eleventh Amendment and sovereign immunity from suit. Dkt. 55 at 6–10.

### D.    EPIC's Claims Against Agency Defendants.

Plaintiff's Second Amended Complaint presents five counts against Agency Defendants. Dkt. 46 at 30–40. Count 1 is an *ultra vires* claim against the Commission Executive Director (official-capacity defendant only) seeking prospective injunctive and declaratory relief (no

monetary damages). *Id.* at 30–32. Count 2 is a violation of the Texas Religious Service Clause, Article I, Section 6-a, of the Texas Constitution against Agency Defendants seeking prospective injunctive and declaratory relief (no monetary damages). *Id.* at 32–34. Count 3 is a violation of the Freedom of Worship under Article I, Section 6 of the Texas Constitution brought against Agency Defendants seeking prospective injunctive and declaratory relief (no monetary damages). *Id.* at 34–35. Count 4 is a violation of free exercise under the First Amendment of the United States Constitution brought under 42 U.S.C. § 1983 against the Commission's Executive Director (official-capacity defendant only) seeking prospective injunctive and declaratory relief (no monetary damages). *Id.* at 35–37. Count 5 is a violation of the Texas Religious Freedom Restoration Act ("TRFRA") brought against the Texas Funeral Service Commission seeking prospective injunctive and declaratory relief, attorney's fees and costs, and compensatory damages to the extent permitted by TRFRA (which authorizes damages but prescribes a statutory limit as to the amount). *Id.* at 37–40.

## II.    ARGUMENTS & AUTHORITIES

A.    **Neither Eleventh Amendment nor sovereign immunity grant Agency Defendants' immunity from suit.**

1.    **Agency Defendants waived immunity from suit by removing the case to federal court.**

The Supreme Court has long recognized that "[i]t would seem anomalous or inconsistent for a State both (1) to invoke jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand[;]" "a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535

U.S. 613, 619 (2002).  "Thus, it is not surprising that more than a century ago [the] Court indicated that a State's voluntary appearance in federal court amounted to a waiver of its Eleventh Amendment immunity."  *Id.* (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883)).  When a state agency or official otherwise entitled to Eleventh Amendment or sovereign immunity removes a case from state court to federal court (or consents to such removal), the removal waives immunity from suit.  *Lapides*, 535 U.S. at 619–24; *Meyers ex rel. Benzig v. Tex.*, 410 F.3d 236, 252–55 (5th Cir. 2005) (rejecting Texas's argument that it retained, post-removal, a distinct sovereign immunity apart from Eleventh Amendment immunity); *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 437 (5th Cir. 2021).

"*Lapides's* interpretation of the voluntary invocation principle, as including the waiver-by-removal rule, applies generally to any private suit which a state removes to federal court," including this suit.  *See Meyers*, 410 F.3d at 242 (applying *Lapides* to both state and federal claims). By voluntarily removing this suit to federal court, Agency Defendants waived immunity from suit—whether labeled Eleventh Amendment immunity or sovereign immunity[3]—and cannot invoke it now.  *See id.*; *see also Butler*, 16 F.4th at 437 (noting that when the state action was removed, "the state agencies [] consented to federal jurisdiction thereby waiving any sovereign immunity in this case").

While other exceptions and waivers to Agency Defendants' immunity from suit also apply, as discussed below, "[b]ecause Texas has waived its immunity from suit in federal court in this case, it is not necessary for the plaintiffs to invoke [them] in order to prosecute their action against

---

[3] "By its terms, the [Eleventh] Amendment does not apply. . . where a citizen sues his own State (or an agency of that State)." *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 596 n.1 (5th Cir. 2021).  "Still, the Supreme Court has often used 'Eleventh Amendment immunity' as a synonym for the States' broader constitutional sovereign immunity." *Id.*

defendants." *See Meyers*, 410 F.3d at 256 (mentioning *Ex parte Young* and declining to analyze its applicability given defendants' waiver-by-removal).  Thus, Agency Defendants are wrong to assert that "even assuming a limited waiver of Eleventh Amendment immunity from suit by removal, EPIC must still establish . . . a proper basis for proceeding under *Ex parte Young*." *Compare* Dkt. 55 at 4, *with Meyers*, 410 F.3d at 256.  Once immunity from suit is waived by removal, no other exceptions or waivers are needed.

**2.    *Ex parte Young* applies to Plaintiffs' federal claim against the Executive Commissioner.**

Setting aside the dispositive waiver-by-removal issue for the sake of argument, Agency Defendants' other immunity arguments miss the mark.  For example, Agency Defendants' motion argues that *Ex parte Young* does not apply to EPIC's claims against the Commission.  Dkt. 55 at 7.  EPIC agrees, which is why its Second Amended Complaint expressly invoked *Ex parte Young* only in the context of its 42 U.S.C. § 1983 claim against the Executive Commissioner.  Dkt. 46 at 5.  EPIC's free exercise claim (Count 4), brought under 42 U.S.C. § 1983 against an official-capacity defendant, alleges an ongoing violation of federal law and seeks relief properly characterized as prospective, and therefore falls comfortably within the scope of *Ex parte Young*. *Compare id.* at 35–37, *with Verizon Md., Inc. v. Public Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.").  More specifically, EPIC alleges that the Executive Director violated EPIC's free exercise rights when he issued a cease-and-desist order prohibiting EPIC from engaging in religious practices (based on

his animus against its religious affiliation) and making a criminal referral to the district attorney. Dkt. 46 at 14, 26–27, 36–37.

The Motion argues that *Ex parte Young* does not apply to EPIC's free exercise claim because (1) the cease-and-desist order and criminal referral that the Executive Director issued to EPIC on March 26, 2025 were not the "final enforcement action—only an ongoing investigation"; and (2) the cease-and-desist order that the Executive Director signed "falls short of the concrete enforcement connection required to invoke *Ex parte Young* jurisdiction." Dkt. 55 at 3. Neither of these arguments has merit. Agency Defendants identify no authority for the proposition that *Ex parte Young* only applies to constitutional violations that also happen to be *final* enforcement actions. The fact that the Executive Director prohibited EPIC's religious rites and referred EPIC to the district attorney for prosecution *while his agency was still mid-investigation* is no defense. As for the requisite enforcement connection, to be amenable to suit under *Ex parte Young*, "Plaintiffs need only show a 'scintilla of enforcement by the relevant state official.'" *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024) (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)). Here, the Executive Director personally signed the cease-and-desist order and was intimately involved in its issuance. Dkt. 46 at 14, 26–27, 36–37. The allegations show more than a scintilla of enforcement. *Ex parte Young* applies to EPIC's free exercise claim against the Executive Director.

### 3. Agency Defendants have no immunity to EPIC's state constitutional and statutory claims.

Even ignoring the dispositive waiver-by-removal issue, EPIC's claims under the Texas Constitution and TRFRA are still not barred by Agency Defendants' immunity from suit. Although there is no implied private right of action under the Texas Constitution, "suits for equitable

11

remedies for violation of constitutional rights are not prohibited." *City of Beaumont v. Boullion*, 896 S.W.2d 143, 149 (Tex. 1995). And unlike with *Ex parte Young* or *ultra vires* claims under Texas law, the Texas Supreme Court has repeatedly "reaffirm[ed] [that] . . . governmental entities may be sued for injunctive relief under the Texas Constitution." *City of Elsa v. MAL*, 226 S.W.3d 390, 381 (Tex. 2007); *see also Texas A&M Univ. v. Carapia*, 494 S.W.3d 201, 205 (Tex. App.—Waco 2015, pet. denied) (noting that *ultra vires* cannot be brought against an entity but also that "suits for injunctive relief" may be maintained against governmental entities to remedy violations of the Texas Constitution). EPIC's Counts 2–3 both seek prospective remedies for alleged violations of the Texas Constitution. Dkt. 46 at 32–35. Agency Defendants would not have sovereign immunity *even in state court before they removed*, much less in the federal court whose jurisdiction they invoked by removal.

As for EPIC's claim under TRFRA, it is barely mentioned by the Motion. *Compare* Dkt. 55 at 6–8, *with* Dkt. 46 at 37–40. TRFRA provides that a "government agency may not substantially burden a person's free exercise of religion" unless "the government agency demonstrates that the application of the burden to the person . . . is in furtherance of a compelling government interest; and . . . is the least restrictive means of furthering that interest." TEX. CIV. PRAC. & REM. CODE § 110.003(a)–(b). TRFRA contains a waiver of sovereign immunity. *Id.* § 110.008(a). Again, Agency Defendants would not have sovereign immunity *even in state court before they removed*, much less in the federal court whose jurisdiction they invoked by removal.

While not the model of clarity, the Motion appears to suggest that—regardless of whether the state court would have jurisdiction over EPIC's claims prior to removal—by removing this action to federal court, Agency Defendants have now maneuvered the claims into a court that lacks

12

jurisdiction to consider them.  *See* Dkt. 55 at 2 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 121 (1984)).  This is exactly the type of maneuvering that the Supreme Court rejected in *Lapides*.  *Compare id.*, *with Lapides*, 535 U.S. at 621–24.  The *Pennhurst* holding cited by the Motion for the general proposition that Eleventh Amendment "immunity applies equally to state-law claims asserted in federal court absent a clear waiver by the State" does nothing to advance Agency Defendants' immunity arguments.  Dkt. 55 at 2.  Indeed, "*Pennhurst* differs from *Lapides* . . . so significantly that its interjection here is plainly inappropriate and somewhat questionable" as "*Pennhurst* was not removed to federal court like *Lapides* and this case, for it was never in state court" and "did not present an issue of waiver by removal as *Lapides* and this case do."  *See Meyers*, 410 F.3d at 252.

**4.      Agency Defendants have no immunity to EPIC's state *ultra vires* claim.**

The Motion's final immunity argument challenges the Court's jurisdiction over EPIC's *ultra vires* claim under Count 1.  Dkt. 55 at 8–10.  Given the removal, "there is no need for [this Court] to decide whether the doctrine would have been appropriate if Texas had not waived its immunity from suit."  *Cf. Meyers*, 410 F.3d at 256.  But ignoring that fatal defect, the motion notes that "[t]he *Ex parte Young* inquiry overlaps with Texas's ultra vires doctrine" and asks this Court to engage in a merits analysis of the *ultra vires* claim to determine whether sovereign immunity bars the claim.  Dkt. 55 at 8.  The Supreme Court has cautioned that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim."  *Verizon Md., Inc.*, 535 U.S. at 646.  But setting all those issues aside for the sake of argument, EPIC has pleaded a plausible *ultra vires* claim.

The pleadings allege that a state official (the Executive Director) acted outside the bounds of his statutory authority under Chapter 651 of the Texas Occupations Code.  *See* Dkt. 46 at 6–9,

13

30–31. "The Executive Director lacks statutory authority to prohibit EPIC from engaging in the religious practices in which it was engaged at the time of the C&D Letter," *first* because "nothing in Chapter 651 authorizes the Commission to order non-license-holders from operating a funeral establishment without obtaining an injunction." *Id.* at 31. This is not a mere disagreement on how an official exercised his discretion. Chapter 651 gives the Commission authority to "bring an action for appropriate injunctive relief against a funeral establishment, an embalmer, or a funeral director who violates this chapter or a rule adopted under this chapter," TEX. OCC. CODE § 651.601, but does *not* give the Commission or Executive Director authority to issue a cease-and-desist order to a non-license holder under the Commission's own authority and without a hearing. *See* TEX. OCC. CODE § 651.501 (describing the disciplinary powers of commission, which would not authorize a cease-and-desist order and, regardless, all require a hearing). The Motion identifies no statutory authority for the Commission or its Executive Director to issue cease-and-desist orders, instead just citing the Commission's authority "to take *appropriate* enforcement-related actions *within its regulatory framework*," thereby begging the question. *See* Dkt. 55 at 8–9 (emphasis added). The Executive Director had no authority to issue the cease-and-desist order and acted outside his authority by doing so.

Even if the Executive Director had statutory authority to issue cease-and-desist orders to a funeral establishment engaged in unlawful funeral service operations on its own authority and without an administrative hearing, which it does not, the Executive Director still had no authority to issue the cease-and-desist order to EPIC, a private religious organization that does not meet the definition of a funeral establishment. *See* Dkt. 46 at 8 (citing TEX. OCC. CODE §§ 651.460(b)(1), .454, 351(a), .001(8). "An official acts without legal authority when he 'exceeds the bounds of his

14

granted authority or if his acts conflict with the law itself.'" *Van Boven v. Freshour*, 659 S.W.3d 396, 402 (Tex. 2022) (quoting *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)). Here, EPIC does not allege that the Executive Director erred in how it wielded its regulatory authority over a regulated entity, EPIC alleges that it falls outside of that regulatory in the first instance. Even ignoring Agency Defendants' waiver-by-removal and assuming that the merits of the claim implicates jurisdiction in federal court, this Court still has subject-matter over EPIC's *ultra vires* claim.

## B.    EPIC's claims are ripe.

The Motion next argues that EPIC's claims are not ripe for adjudication. Dkt. 55 at 10. "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Forster*, 205 F.3d 851, 857 (5th Cir. 2000). Here, EPIC already suffered an injury. Its constitutional and statutory rights were violated in March 2025 when Agency Defendants issued a letter that prohibited EPIC from engaging in religious rites and made a criminal referral to a district attorney.[4] As a result of the Commission's actions, people died without receiving their religious burial rites. Dkt. 1-3 at 12–24. Just to pick one specific example, "[o]n July 5, 2025, a member of [EPIC's] congregation passed away" but "[b]ecause of the March 26, 2026 cease-and-desist order, EPIC could not provide the full range of religious funeral rites at the mosque," a "devastating loss for the family and [EPIC's] community." Dkt. 4-1 at 2.

---

[4] The existence of an actual injury for jurisdictional purposes (*e.g.*, standing or ripeness) cannot be conflated with the claims' merits. *See, e.g., ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989) (quoting *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)) (holding "federal standing . . . in no way depends on the merits of the claim"); *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 (5th Cir. 2014) (holding that the district court erred by "conflat[ing] the actual-injury inquiry for standing purposes with the underlying merits of the [] constitutional claims").

15

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "This principle applies with equal force to the violation of [TRFRA] rights because [TRFRA] enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise. *See Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (describing RLUIPA); *Barr v. City of Sinton*, 295 S.W.3d 287, 296 (Tex. 2009) (noting that "TRFRA, RFRA, and RLUIPA were all enacted in response to [the same Supreme Court opinion] and were animated in their common history, language, and purpose by the same spirit of protection of religious freedom"). What EPIC has demonstrated is not just an injury-in-fact for the purposes of ripeness and standing, it is an *irreparable* injury.

Now, nearly a year after EPIC filed suit, Agency Defendants assert for the first time that EPIC's lawsuit is not ripe because "the Commission is still working on its investigation and has not articulated a definitive enforcement position." Dkt. 55 at 11. Agency Defendants argue, in short, that because they took adverse actions against EPIC (in violation of its rights) *before* a definitive determination, EPIC did not suffer any injury and this Court cannot consider its claims. Not so. There was nothing circumspect about Agency Defendants' March 26, 2025 letter stating it had "determined that [EPIC] [is] operating as a funeral home without an establishment license in violation of TEX. OCC. CODE § 651.351" and ordering EPIC "to cease and desist funeral operations" "effective immediately." *See* Dkt. 46 at 78. Nor were Agency Defendants less than definitive in publicly describing "the seriousness of [their] findings" and identifying the activities in which EPIC was unlawfully engaged as "includ[ing] body transportation, ghusl (body wash), private viewing, and funeral prayers" in their accompanying press release. *See* **Ex. 2** (TFSC News)

16

at 7. But regardless, Agency Defendants' admission that they issued a cease-and-desist order and criminal referral without first determining their "definitive enforcement position" does not deprive this Court of jurisdiction.

In support of their ripeness argument, Agency Defendants rely heavily upon the letter they sent to EPIC on July 16, 2025, on the eve of this Court's TRO hearing. *See* Dkt. 55 at 11 (citing Dkt. 12-1). But that letter, while a welcome reversal, did nothing to disturb the ripeness of EPIC's claims. For months, EPIC experienced irreparable injuries as a direct result of Agency Defendants' actions. That Agency Defendants are now, almost a year into this litigation, waffling on positions they publicly declared in a press release over a year ago *still posted on their website* does nothing to disturb the fitness of the issues presented for judicial decision. Contrary to Agency Defendants' suggestion, this case does not present an "abstract disagreement[] over regulatory policy." *Contra id.* at 10–11. There is nothing "abstract" for the families of the deceased whose loved ones were buried without the proper religious rites because of Agency Defendants' cease-and-desist order. *Compare id.*, *with* Dkt. 4-1 at 2–3.

To evaluate ripeness, courts "balance[]" "the fitness of the issues for judicial decision" against "the hardship to the parties of withholding court consideration." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007) (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). Here, the issues presented are fit for judicial decision and the hardship on EPIC of withholding court consideration—particularly now, almost a year into this litigation—would be considerable. This case is ripe for judicial review.

## C.    EPIC had standing to file its claims.

Finally, Agency Defendants challenge EPIC's standing. Dkt. #55 at 12–14. The standing inquiry is "focused on whether the party invoking jurisdiction had the requisite stake in the

17

outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008). To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant (causation); and (3) that is likely to be redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "To prove traceability, Plaintiffs must allege 'a causal connection between the injury and the conduct complained of.'" *Book People, Inc. v. Wong*, 91 F.4th 318, 332 (5th Cir. 2024). "The causation element does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *LULAC v. City of Boerne*, 659 F.3d 421, 428 (5th Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). "Unlike tort law, Article III standing causation imposes no stringent or inflexible standard." *Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 236 (5th Cir. 2025). "Indeed, an indirect causal relationship will suffice for standing, and plaintiffs may satisfy the requirement by alleging a chain of causation between defendants' conduct and plaintiffs' injuries." *Id.* (internal quotations omitted).

Here, the Motion first argues that Agency Defendants' March 26, 2025 cease-and-desist order and referral to a district attorney for potential prosecution did not inflict an injury and that EPIC's injury is, instead, self-inflicted. *See* Dkt. #55 at 12–14. The Motion contends that EPIC's decision to cease and desist its operations in response to Agency Defendants' cease-and-desist order resulted from an "independent decision to alter [EPIC's] behavior in response to a perceived regulatory risk rather than from a concrete legal requirement." *See id.* at 12–13. This contention misses the mark. An order to cease operations is not merely a "perceived regulatory risk." It is a concrete requirement imposed by the State.

To the extent Agency Defendants would weaponize the opacity of the order as to what specific conduct it prohibited, their argument fails on two levels. *First*, a party facing down an order to cease unspecified conduct with a referral for criminal prosecution can hardly be expected to sort through which activities are covered by the prohibition and which were not, and then continue engaging in the latter. Indeed, from EPIC's perspective, *none* of the activities in which it was engaged in March 2025 were prohibited by law. The vagueness of Agency Defendants' order cuts against them, not in their favor. *Second*, the Agency Defendants' contemporaneous press release specifically identifies EPIC's religious activities as "activities that collectively necessitate a funeral establishment license under Texas law." **Ex. 2** (TFSC News) at 6–7. The proposition that EPIC *voluntarily* decided to cease those religious activities rests on the faulty premise that EPIC and its members were required to violate Agency Defendants' order—while facing potential *criminal* prosecution for doing so—to have standing to challenge it. But "[w]hen an individual is subject to [threatened enforcement], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Rather, "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* EPIC exceeds this low bar.

Agency Defendants also suggest that their cease-and-desist order was neither a "binding enforcement action," Dkt. 55 at 12, nor a "coercive enforcement action," *id.* at 13. In so doing, it appears that the Motion concedes that Agency Defendants lack legal authority to issue or enforce their cease-and-desist order. *See id.* at 12–13. Because Agency Defendants lack legal authority to

issue or enforce their cease-and-desist order, the logic goes, EPIC was free to violate the order without consequences.  And because there would be no consequences for its violation, the injuries EPIC experienced as a result of its decision to comply are strictly voluntary and not fairly traceable to Agency Defendants.  In effect, the Motion suggests that if a state official issues an order purporting to enjoin certain activities but the official does not actually possess legal authority to issue the order or impose consequences for its violation, then the recipient's compliance is strictly voluntary and any injury experienced by the recipient because of its compliance is self-inflicted. Agency Defendants provide no authority for this breathtaking proposition, which would insulate *ultra vires* actions from judicial review.

Finally, Agency Defendants argue that EPIC has not established redressability.  A "person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021); (citing *Clapper*, *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 n.5 (2013)).  Here, the evidence suggests that Agency Defendants have *already* changed their position on the lawfulness of EPIC's actions during and because of this litigation.  *Compare* **Ex. 2** (TFSC News) at 6–7, *with* Dkt. 12-1 at 2–3.  Agency Defendants have backed away from what they previously "determined" about whether EPIC was "operating as a funeral home without an establishment license," Dkt. #46 at 78, what their press release described as "findings" of such "seriousness" as to warrant "a criminal referral," **Ex. 2** (TFSC News) at 6– 7.  The evidence demonstrates that the risk of harm is sufficiently imminent and substantial and that the relief sought would prevent it.

### III.    PRAYER

For all these reasons, EPIC respectfully asks the Court to deny the motion to dismiss.

**Dated:** May 14, 2026

Respectfully submitted,

ARAMBULA | TERRAZAS PLLC
1001 S. Capital of Texas Hwy.
Building L, Suite 250
Austin, Texas 78746

By: /s/ *Eric A. Hudson*
Eric A. Hudson
State Bar No. 24059977
ehudson@terrazaspllc.com
Benjamin L. Dower
State Bar No. 24082931
bdower@terrazaspllc.com

**ATTORNEYS FOR EAST PLANO ISLAMIC CENTER**

### CERTIFICATE OF SERVICE

I affirm that on May 14, 2026, I filed the foregoing through the Western District of Texas's

ECF system, serving a copy on all counsel of record in the process.

/s/ *Eric A. Hudson*
Eric A. Hudson

21