IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| East Plano Islamic Center (EPIC),<br>　　*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§<br>§ | Civil Action No. 1:25-cv-1085-DAE |
| Texas Funeral Services Commission,<br>Texas Funeral Services Commission<br>Executive Director, in the official<br>capacity, and Kristin Tips, in her<br>individual capacity,<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§ | |

**DEFENDANTS TEXAS FUNERAL SERVICE COMMISSION AND
TEXAS FUNERAL SERVICE COMMISSION EXECUTIVE DIRECTOR'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Moving Defendants, the Texas Funeral Service Commission and the Texas Funeral Service Commission Executive Director in the official capacity, file this Reply in support of their April 30, 2026 Motion to Dismiss (Doc. 55). Given the limited space available, moving Defendants will first comment on a few factual matters and allegations found in the Motion and Plaintiff's Response before turning to rebut a discrete number of legal points. Matters not addressed anew in this Reply are not abandoned; Defendants rely on and reincorporate their previously articulated positions.

**I.　　COMMENTS ON CERTAIN FACTUAL POINTS AND ALLEGATIONS**

TFSC received a complaint from a third party on April 29, 2024 alleging that EPIC – a one-time TFSC license holder whose license had lapsed – was providing funeral services without a license. (Doc. 55-1) Upon receipt of the complaint, and as foreseen in its governing statute, TFSC opened an investigation. Occ. Code § 651.103. (Chapter 651 of the Texas Occupations Code is attached as **Ex. 1**.) Nearly a year later, on March 26, 2025, TFSC's former Executive Director sent EPIC a letter instructing it to immediately "cease and desist funeral service operations." (Doc. 22-

4) The term "funeral service" used therein is defined in the Occupations Code to "mean[] a *service* performed *incident to a funeral ceremony* or for *the care and preparation of a dead human body for burial*, cremation, or other disposition." Occ. Code § 651.001(10) (emphasis added)

At bottom, the March 26, 2025 letter was an unremarkable instruction to an unlicensed entity to not perform activities that require the holding of a license while the investigation remained ongoing. In no sense can the letter fairly be characterized as one "prohibit[ing] EPIC from engaging in religious rites." (Doc. 56 at 15) It was a neutral instruction to obey a law of general application, not an instruction to discontinue religious activities.

Yet Plaintiff's case rests almost entirely on this single piece of correspondence, and Plaintiff effectively asks the Court to ignore all subsequent events. EPIC's ripeness argument, in particular, would require the Court to treat the March 2025 letter as the final word. It was not.

*      *      *

Plaintiff ignores almost entirely, for example, the more detailed letter that TFSC's Interim Executive Director sent on July 16, 2025. (Doc. 55-1) In that letter, TFSC informed EPIC that the agency's investigation, initiated following the complaint received, remained "ongoing" and that "a final determination ha[d] not been made." (Doc 55-1 at 1) The Interim Executive Director also clarified for EPIC that certain death-related activities are not regulated by the TFSC, do not require the holding of a TFSC license, and did not fall within the scope of the March 26, 2025 letter. *Id.* The permitted activities were identified in the July 2025 letter as including:

> 1) operating a hotline or otherwise receiving and providing information to/from members within the religious community related to organization of religious rites for a deceased person; 2) helping persons affiliated with the deceased identify and/or contact a licensed funeral establishment or funeral director; 3) notifying members of the community of the community prayers to be performed for the deceased; 4) performing the funeral prayer (Janaza); or 5) helping persons affiliated with the deceased with collecting the death certificate (but without EPIC itself providing or filing the certificate). (Doc 55-1 at 1)

2

The Interim Executive Director also reminded EPIC that "helping persons affiliated with the deceased arrange for the transportation of the body to and from the EPIC mosque" and "helping persons affiliated with the deceased wash and shroud the body" were, by contrast, regulated activities that involved the handling of human remains. TFSC clarified for EPIC in the letter that those activities could proceed only when performed in accordance with applicable Texas law, including Occupations Code Chapter 651. (Doc 55-1 at 2)

Given the specificity of the assistance provided to EPIC in TFSC's July 2025 letter about how EPIC could pursue its activities, coupled with TFSC's indication that the investigation was ongoing and that no final determination had been reached, EPIC's decision to suspend – apparently immediately and unreservedly – all of its activities relating to the deaths of its congregants represented, moving Defendants argued in their Motion to Dismiss, an "independent" and "voluntary response to a non-final agency action, not an injury fairly traceable to Defendants." (Doc. 55 at 12) Accordingly, Article III standing was lacking. (Doc. 55 at 12-13)

\*    \*    \*

Throughout its Response, Plaintiff argues that the regulatory regime of Occupations Code Chapter 651 is not applicable to its operations, suggesting that EPIC is a "volunteer organization" and/or a "religious organization praying over a deceased person as a religious activity for which compensation is not sought, not advertised, and not accepted" and hence "does not meet the definition of a funeral establishment." (Doc. 56 at 2) Yet, identifying the precise nature of the activities EPIC carries out, alone or in cooperation with others, and the manner in which those activities are remunerated are factual queries that go to the heart of TFSC's ongoing investigation.

Because these specific issues are potentially contested fact issues, there is no need to delve further into the particular allegations, or into the underlying evidence, at this stage. This is so for

two reasons. First, and most importantly, their resolution is of no import for considering the dismissal grounds raised in the moving Defendants' Motion to Dismiss. And, second, TFSC's investigation is actively continuing as of the date of this Reply, as explained in **Section II.B**, *infra*.[1]

## II.    LEGAL ASPECTS

### A.  TFSC Is Bestowed with the Requisite Regulatory Authority to Investigate Plaintiff

Plaintiff suggests that TFSC's regulatory authority is restricted under Texas Occupations Code Chapter 651 principally to acting against holders of TFSC licenses and provisional licenses. While Plaintiff concedes, as it must, that TFSC also has authority more broadly over "persons," it aims to cabin that latter power by arguing that it is available only "[i]n discrete instances." (Doc 56 at 2) Plaintiff thus cites Occupations Code § 651.601 and notes that it allows TFSC to seek injunctive relief against "a funeral establishment, an embalmer, or a funeral director who violates this chapter or a rule under this chapter." (Doc 56 at 2 (citing Occ. Code § 651.601, though the accurate cite is to § 651.601(a))) Plaintiff also posits that "[a]s it relates to the operation of a funeral establishment, funeral directing, or a funeral director, the Commission's regulatory authority is limited to persons who are engaged in the statutorily-defined activities *for compensation*." (*Id.*)

The implication that Plaintiff aims to signal through these developments is that TFSC's ability to seek an injunction is limited to actions against license holders but does not reach entities

---

[1] It is, in all events, somewhat difficult for Defendants to elaborate in greater detail at this stage, in part because Plaintiff reneged on the parties' agreement (and acted contrary to the Court's January 15, 2026 confirming order (Doc. 50)), when it failed to proceed with the production of documents in response to the moving Defendants' November 14, 2025 requests for production. Plaintiff reneged even after it had filed an Unopposed Motion for Protective Order (Doc. 53) in which it argued that "good cause exists for the Court to enter a protective order," because Defendants TFSC and TFSC Executive Director "have submitted discovery requests that solicit material that EPIC believes is confidential, sensitive, and private for which special protection would be warranted," and because entry of the order would "expedite the flow of information." The Court entered the Confidential and Protective Order on March 11, 2026. (Doc. 54) (For their part, the moving Defendants upheld their end of the parties' bargain, by producing documents in response to EPIC's requests for production on a rolling basis, with production ending and a privilege log being produced by mid-December 2025.) While this issue has not been raised with the Court, it may need to be addressed via a motion to compel. In like fashion, Plaintiff recently resisted responding to a document subpoena issued directly by TFSC as part of the agency's investigation. This is discussed in **Section II.B** below.

such as EPIC that are not or (more precisely in EPIC's case) are no longer license holders.[2]

Yet, while various provisions of Occupations Code Title 3, Subtitle L, Chapter 651 ("Crematory Services, Funeral Directing, and Embalming") do indeed address license holders expressly, a large number of the statute's provisions are drafted in broader terms, including a host of them that apply expressly to "persons." Individually and collectively, these provisions make clear that TFSC's regulatory power includes oversight authority for unlicensed persons or entities involved in activities falling within the agency's field of action.

Among such provisions, one can cite section 651.460(a), which provides in relevant part that a "***person violates this chapter*** if the person: […] (3) violates this chapter, a rule adopted under this chapter, an order by the commission revoking, suspending, or probating a license […]; [or] (5) is ***associated with a funeral establishment***, whether as an employee, agent, subcontractor, assignee, owner, or otherwise, ***and fails to comply with this chapter*** or a rule adopted under this chapter […]" (emphasis added). TFSC's investigation to date has shown that EPIC was cooperating with an array of outside providers, including funeral homes.

Meanwhile, § 651.451 provides that a "person violates this chapter if the person … (6) impersonates a funeral director, embalmer, or other person regulated under this chapter."

And a still further example directly contradicts Plaintiff's implicit suggestion (Doc. 56 at 2) that TFSC can seek an injunction only concerning holders of licenses. While, as noted above, Plaintiff evokes Occ. Code § 651.601(a), another subsection located just a few lines below, § 651.601(a-2), allows TFSC to seek injunctive relief against non-license holders: "The commission may bring an action for appropriate injunctive relief ***against a person who is not***

---

[2] Again, while not necessary for resolving the present Motion to Dismiss, the evidence will show that EPIC held a TFSC license, let it lapse, and then entered into arrangements with third parties to outsource certain services.

***licensed under this chapter to enjoin a violation of this chapter*** or a rule adopted under this chapter" (emphasis added).

In similar fashion, the corresponding regulations found in the Texas Administrative Code ("TAC") provide that "[i]f a ***person*** violates any provision of Occupations Code, Chapter 651 […] proceedings may be instituted to impose administrative penalties, administrative sanctions, or both […] in accordance with the provisions of Occupations Code §§ 651.5515 – 651.552." (22 TAC § 203.43(a)[3] (emphasis added)) Under Occ. Code § 651.552(a), the amount of such penalty can be as high as $5,000 per violation.

It should be pointed out, finally, that Plaintiff argues that it is not subject to regulatory oversight by TFSC because it is not, it alleges conclusorily, engaged in any statutorily-defined activity on a for compensation basis. (Doc 56 at 2) Yet, as mentioned in **Section I** and developed further in **Section II.B** below, this precise question is one of the core factual inquiries that TFSC is currently examining (and which EPIC is resisting). To argue that the agency is powerless to conduct its investigation and that in doing so it is acting without authority, when the very circumstances that Plaintiff claims insulate it from TFSC oversight are under investigation, represents circular reasoning of the most aggravated form.

B. <u>A Justiciable Controversy Is Lacking, as Plaintiff Has Brought a Premature Challenge to an Ongoing Regulatory Investigation</u>

Article III limits federal jurisdiction to actual cases or controversies. As explained in TFSC's Motion to Dismiss, this standard presupposes, *inter alia*, that a plaintiff can establish that its claim is ripe and not premature. (Doc. 55 at 10-12) Plaintiff's claims should be dismissed, TFSC

---

[3] Regulations concerning TFSC enforcement measures are found in Subchapter C to Title 22, Part 10, Chapter 203 of the Texas Administrative Code. (Excerpts of Chapter 203 are attached as **Ex. 2**).

argued, because Plaintiff has not presented a ripe controversy for resolution, as TFSC's investigation remains actively ongoing, with no final determination having been made. (*Id.*)

Under 22 Tex. Admin. Code § 203.40(a), "[a]ny person may file a written complaint with the Commission concerning alleged violations of any statute over which the Commission has regulatory authority as well as the Rules of the Commission." Upon receipt of a written complaint, it is "assigned to an Investigator for review." (22 TAC § 203.41(a)) If an investigation is opened, additional information and documents may be requested while it is ongoing from the complainant, the party under investigation, or any witnesses (22 TAC §§ 203.41(c), 203.41(d)), including via a subpoena issued by the TFSC Executive Director (Tex. Occ. Code § 651.156(c)).

The investigator's findings and any applicable administrative penalties or license sanctions are ultimately set out in an investigative report. (22 TAC § 203.41(e)) The issuance of that report and certain avenues of potential subsequent proceedings, both formal and informal, are outlined at, *inter alia*, TAC § 203.42 and Occ. Code §§ 651.506, 651.553, 651.554, and 651.555.

One of the more recent steps in the investigation occurred on March 25, 2026, when TFSC issued a subpoena summoning EPIC to provide, within 14 days, certain items of information deemed critical to the investigation, including information concerning: agreements into which EPIC had entered with third parties for the provision of funeral services; identifying information and other data concerning the decedents who received services through EPIC (names, date of death, date of interment, cemetery where interred, funeral director(s) involved, death certificates, etc.); locations where funeral services were performed; payment information, including concerning payments to cooperating funeral homes and cemeteries; compensation collected by EPIC for each decedent; and the cost of interment for each decedent (and how, by whom, and to whom it was paid). (Doc. 55-2)

On April 15, 2026, EPIC's counsel wrote to TFSC to indicate that EPIC was declining to provide any information in response to the subpoena as drafted: "The Subpoena […] presents threshold jurisdictional, procedural, and constitutional defects that preclude compliance," EPIC argued. (Doc. 55-3) Among other arguments, EPIC claimed that the requests in the subpoena overlap with the claims in the instant federal lawsuit, writing: "To the extent the Commission seeks information bearing on those issues, such matters are more appropriately addressed within that proceeding and subject to the Federal Rules of Civil Procedure and judicial oversight, rather than through parallel administrative process."[4] (*Id.*) On May 13, 2026, TFSC's general counsel at the Administrative Law Division of the Office of the Attorney General issued a demand letter requiring EPIC's compliance with the subpoena by May 28, 2026, failing which TFSC announced that it would move for judicial enforcement. (**Ex. 3**)

It is not necessary to delve further into these issues, the point here being only to show that TFSC's investigation remains ongoing, that EPIC has done nothing by its conduct to facilitate bringing the investigation to a close, that TFSC's assigned investigator has not yet issued an investigative report, and that, accordingly, EPIC's claims are not ripe for consideration.

C. <u>The Article III Defenses (Standing, Ripeness, Etc.) Cannot Be Waived, and the Court May Not Proceed in the Absence of Subject Matter Jurisdiction</u>

EPIC argues that Defendants waived immunity from suit by removing this case to federal court. (Doc. 56 at 8-10) But that argument does not provide an answer to the Motion's independent jurisdictional grounds for dismissal: Removal cannot create Article III standing, redressability,

---

[4] As TFSC may have occasion to explain more fully in a forthcoming motion to compel, there is a degree irony to EPIC's position, if not a certain schizophrenic or Kafkaesque quality, given that in the instant lawsuit EPIC has relied upon the existence of the TFSC subpoena to justify not responding to TFSC's November 14, 2025 requests for production, arguing primarily that there is an overlap between the documents TFSC is seeking for its investigation via subpoena and the documents that the moving Defendants seek here through their requests for production.

ripeness, or an ongoing violation of federal law. Those requirements exist irrespective of whether removal waived certain immunity from suit defenses.

Thus, while *Lapides v. Board of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002), and *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 252-55 (5th Cir. 2005), stand for the proposition that a state may waive so-called Eleventh Amendment immunity from suit in federal court through removal, neither case holds that a removing state agency forfeits all Rule 12(b)(1) defenses or that a plaintiff may proceed without satisfying Article III. Nor could they. Federal courts have an independent obligation to assure themselves of subject-matter jurisdiction in every case. *The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020). A court's lack of subject-matter jurisdiction is a defect that a party cannot waive; it is a sufficiently critical issue that it can be raised by a party or by a court *sua sponte* and at any time, including for the first time on appeal. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 702 (1982); *Lorenz v. Texas Workforce Comm'n*, 211 Fed. App'x 242, 244 (5th Cir. 2006).

In short, even where Eleventh Amendment immunity from suit is waived, a plaintiff must still show, to proceed in federal court, a concrete injury, traceability, redressability, and ripeness. Those defects are not immunity defenses. They are constitutional limits on federal judicial power. A state's waiver of its immunity from suit does not amount to a broader waiver of other defenses to which the state is entitled. *Cf. Lombardo v. Pennsylvania*, 540 F.3d 190, 198-99 (3d Cir. 2008).

Accordingly, in a case removed to federal district court by a state entity, the district court may indeed consider the entity's lack of standing jurisdictional defense, notwithstanding any waiver of immunity from suit resulting from the removal. *See Lutostanski v. Brown*, 88 F.4th 582, 586-87 (5th Cir. 2023); *Medical Choice Home Health, LLC v. Young*, No. 1:23-cv-116, 2024 U.S. Dist. LEXIS 254519, at *11-21 (S.D. Tex. June 21, 2024).

9

Similarly, a trial court may consider a defendant's Article III ripeness dismissal argument in a removed case, before remanding. *McAfee, Inc. v. Wilmer, Cutler, Pickering, Hale & Door, LLP*, No. 4:08-cv-160, 2008 U.S. Dist. LEXIS 62287, at *4-8 (E.D. Tex. Aug. 14, 2008); *id.* at *4 ("To remove this case […], WilmerHale alleged that this Court possessed subject matter jurisdiction […]. Nevertheless, WilmerHale now, to dismiss the action, argues that this Court does not possess subject matter jurisdiction because McAfee's claims are not ripe. […] [T]he Court agrees that McAfee's claims are not ripe."); *Estate of Colyer v. Wells Fargo Bank, NA*, No. 4:25-cv-01226, 2025 U.S. Dist. LEXIS 234682, at *3-6 (E.D. Mo. Dec. 2, 2025) (quoting *Dakota, Minn. & E. R.R. Corp. v. South Dakota*, 362 F.3d 512, 520 (8th Cir. 2004) ("The issue of ripeness, which has both Article III and prudential components, is one of subject matter jurisdiction.")).

Section 1447(c) of U.S. Code Title 28 provides in this regard that a federal district court must remand a case back to the state court if it determines **at any point** that subject matter jurisdiction is lacking. Indeed, after setting out the typical deadline for filing of a motion to remand "on the basis of any defect other than the lack of subject matter jurisdiction," the article provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Upon determination by this Court that any one of the Article III grounds raised in TFSC's Motion to Dismiss is meritorious, remand of this case to the 250th Judicial District Court of Travis County (Texas), where it originated, would be consistent with the Fifth Circuits rulings in *Lutostanski*, 88 F.4th at 587-88, and *Spivey v. Chitimacha Tribe*, 79 F.4th 444, 447 (5th Cir. 2023).

## III.    PRAYER FOR RELIEF

For the reasons explained above and in the April 30, 2026 Motion to Dismiss, moving Defendants respectfully ask the Court to grant the relief identified in Section IV of said Motion.

Respectfully submitted,

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

*/s/ Thomas Bevilacqua*
THOMAS BEVILACQUA
Texas Bar No. 00793342
SCOTT D. SMITH
Texas Bar No. 24011874
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
P: (737) 224-2489 | F: (512) 320-0667
thomas.bevilacqua@oag.texas.gov
scott.smith@oag.texas.gov

**Counsel for Defendants Texas Funeral Service Commission and Texas Funeral Service Commission Executive Director, in the official capacity**

## CERTIFICATE OF SERVICE

I certify that on May 21, 2026, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all counsel of record in this case.

*/s/ Thomas Bevilacqua*
Thomas Bevilacqua
Assistant Attorney General

11